ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY
v. G. F. MECKLIM.

1. LINE OF RAILROAD, *Definitely Fixed; Rights of Company to Lands.* On November 28, 1870, the Atchison, Topeka and Santa Fé Railroad Company made a survey of the line of its railroad from Wichita to Fort Dodge, running through Barton county; the company had the survey mapped, and a copy thereof filed with the secretary of state of the state of Kansas, and also with the secretary of the interior, as designating the definite location of the line of its railroad. The map was filed in the office of the secretary of state, December 26, 1870, and with the department of the interior, on January 10, 1871. In August, 1871, another survey for the line of the railroad was made by the company, which changed the road from Newton to Hutchinson, and also changed the route of the railroad in the vicinity of Fort Dodge; this survey was continued on through the county of Barton, but did not change materially the line of the road in that county. Before December 8, 1872, the railroad was constructed through Barton county upon the survey of 1870, being the same survey as 1871, excepting some slight and unimportant alterations; *held,* that, notwithstanding said changes, the line or route of the said railroad was definitely fixed in Barton county, in November, 1870, within the provisions of the act of congress of March 3, 1863, and that the rights of the railroad company attached to the lands situated in that county, and granted under the provisions of said act of congress, at said date.

2. HOMESTEAD SETTLEMENT, *Initial Right of.* The initial or inceptive right of a homestead settlement under the acts of congress, date from the entry of the land at the local land office; that is, from the time of making application to the government through the local land officers for the benefit of taking a homestead for actual settlement and cultivation, as provided for in the acts relating to homestead entries, and, therefore, the possession and settlement of public land, prior to the application and entry, give a party no vested right to said land as a homestead in opposition to the rights of a railroad company deriving title to said land by virtue of the provisions of the act of congress of March 3, 1863, granting lands to the state of Kansas to aid in the construction of railroads and telegraphs, when the line or route of said road is definitely fixed antecedently to such application and entry of the land as a homestead.

*Error from Barton District Court.*

ACTION in the nature of ejectment, brought by the *A. T. & S. F. Rld. Co. v. Mecklim.* Trial by the court at the March

Term, 1878, and findings and judgment for the defendant. The plaintiff brings the case to this court. The facts, pleadings and proceedings are fully stated in the opinion.

· *Ross Burns*, for plaintiff in error.
*Clayton & Clayton* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The action below was one in the nature of ejectment, brought by plaintiff in error against the defendant in error, to recover the possession of a quarter-section of land in Barton county. The petition was filed May 16th, 1877, and was in the ordinary form, alleging title in plaintiff, and that the defendant unlawfully kept the plaintiff out of possession. The answer admitted that the legal title to the land in controversy was in the plaintiff, but set up a homestead settlement and entry, under the laws of the United States, which it alleged were paramount to the title or estate of plaintiff, and that the plaintiff obtained a patent to the land by an erroneous construction of the statutes of the United States, in fraud of the rights of the defendant; in brief, that the defendant was the equitable owner under the homestead laws, and that the plaintiff held the legal title in trust for the defendant. The case was tried at the March term of the court for 1878, to the court, without a jury. The questions of fact in controversy were as follows:

*First*, What was the date of the definite location of the line of the plaintiff's railroad in and through Barton county?

*Second*, What was the date of entry of said homestead claim?

*Third*, What was the date of the settlement of said homestead claimant?

The court made the following findings of fact in answer thereto: That the line of plaintiff's railroad was not definitely located through Barton county by the survey of 1870, but the definite location of said road in and through said county was in August, 1871; that the defendant entered the land at the land office January 11, 1871; that the defendant settled

upon the land November 1, 1870, and that at the time of such settlement and entry the land was government land, and a part of the public domain.  As conclusions of law, the court found that the defendant had the paramount title to the land in question, and that the plaintiff never acquired any right or interest in the land, and was not, at the commencement of the action, nor at any other time, entitled to the possession of the same.  Judgment was accordingly rendered in favor of the defendant, and the plaintiff brings the case here.

The contention of the parties is over the finding of the court of the time when the line or route of the railroad was definitely fixed in Barton county.  On the part of the plaintiff it is contended that the evidence conclusively establishes that the line of its railroad was definitely located by a survey made November 28, 1870.  On the other hand, it is claimed by the defendant that the evidence shows that the line of the railroad was not definitely fixed until August, 1871.  The date of the location of the line of the road is very material; we may say decisive of the rights of the parties.  The plaintiff claims the land, and is the grantee of the patent title from the United States under the provisions of the act of congress of March 3, 1863, granting lands to the state of Kansas, and that it completed its line of railroad to the west line of the state by December 8, 1872.  The act of 1863 contains this provision :

"But in case it shall appear that the United States have, when the lines or routes of said road and branches are definitely fixed, sold any section or any part thereof granted as aforesaid, or that the right of preëmption or *homestead settlement has attached to the same,* or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected, for the purposes aforesaid, from the public lands of the United States nearest to tiers of sections above specified, so much land, in alternate sections or parts of sections designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved or otherwise appropriated, or to which the rights of preëmption or homestead settlements have attached as aforesaid."

If the route of plaintiff's railroad was not definitely fixed till August, 1871, the plaintiff is not entitled to the land in dispute under the grant of congress, because the evidence clearly sustains the finding that the defendant made his homestead entry on January 11, 1871, and in construing the act of March 3, 1863, the supreme court of the United States has held that " the grant was a float until the line of the road should be definitely fixed," and "private entries, preëmption and homestead settlements, and reservations for special uses, continued within the supposed limits of the grant the same as if it had not been made" until the route of the road is definitely fixed. ( *L. L. & G. Rld. Co. v. United States,* 92 U. S. Rep., 2 Otto, 733.)

As the findings of fact of the trial court were based upon an agreed statement of facts, maps, a deposition, and other documentary evidence, the action comes before us in substantially the same manner as before that court.   Perhaps we should add to this declaration, so as not to be misunderstood, the further statement that we do not consider the oral evidence of the witnesses, Dodge and Moses, important, at least sufficiently so to control the other testimony.   In the agreed statement of facts, it is admitted "that the lands described in the petition lie within the ten-mile or granted limits of plaintiff's grant; that on November 28, 1870, the plaintiff made a survey of the line of its railroad from Wichita on to Fort Dodge, running through all of Barton county, and that such survey was mapped, and a map thereof filed with the secretary of the interior, and also with the secretary of state of the state of Kansas, as the definite location of the line of the plaintiff's railroad; that afterward, in August, 1871, another survey was made by plaintiff of the line of its railroad, commencing at Newton, in Harvey county, and running to Hutchinson, and that said survey was continued on through the county of Barton about August 31, 1871; that the character, deviation, and extent of said survey so made in August, 1871, through the county of Barton, was, as is set forth in the deposition of J. R. Ellinwood, on file in the case, ex-

cept as otherwise admitted herein — the defendant in nowise admitting, however, that the line of the plaintiff's railroad was definitely fixed and determined by said survey of 1870; that it is also admitted that the line of plaintiff's railroad was actually built on the line as surveyed in August, 1871." The testimony of J. R. Ellinwood, as appears from his deposition, is in substance that he was an assistant engineer under T. J. Peter, the chief engineer; that under Mr. Peter he had charge of the field work, running the lines and engineering, and also most of the office work connected with the engineering department; that in the fall of 1870 he made a survey from Wichita to Fort Dodge; that this survey was up the valley of the Arkansas river, on the north side of it from Wichita to Fort Dodge, in Kansas, and passing through ranges 14 and 15, west, in Barton county; that this survey was made for the location of the road; that a map of such location was made, and he made copies of the map — one for the secretary of the interior, and one to file in the office of the secretary of state of the state of Kansas, and one for the company; that the location of the plaintiff's road from Wichita to Fort Dodge was fixed and determined by that survey; that in the summer of 1871, he made a new survey for the location of the road from Newton west, connecting with the survey of 1870 at Cow creek, in Reno county, near where the town of Hutchinson now stands; that the railroad was actually built from Hutchinson through the west part of Rice county, and on to Fort Dodge, on the line of the survey of 1870, as platted, with the exception of certain slight changes; that the survey of 1870, all through Barton county, was the only survey ever made through said county for the purpose of general location and fixing of the line of the road; that while the road through ranges 14 and 15, west, in Barton county, was not finally built exactly on the route surveyed in 1870, the changes were slight—in some places ten feet or twenty-feet, and in some places perhaps a hundred feet; and that these changes were principally made in the actual construction of the road, for the purpose of getting crossings at

1. Line of railroad definitely fixed; rights of company to lands. streams at right angles with the course of streams. Upon this evidence and the facts agreed to, we can come only to the conclusion, that the line or route of the plaintiff's railroad was definitely fixed in Barton county, in November, 1870. That the route or line of the road was changed in 1871, so as to run from Newton to Cow creek, ( near Hutchinson,) and was also changed in the same year several miles, in the vicinity of Fort Dodge, does not necessarily imply a change of location in ranges 14 and 15, in Barton county. If the line of the road was definitely fixed in said ranges, on November 28, 1870, the changes of the line in other counties do not set aside or undo the location in Barton county. Counsel for defendant severely criticise the testimony of Ellinwood, and charge that it is contradictory, and unsatisfactory, and that the written stipulations, and admissions, and the maps, must control as to the extent and deviation of the survey of 1871, from the one of 1870. The agreed statement is to the effect, " that the character, deviation and extent of said survey so made in August, 1871, through the county of Barton, was as is set forth in the deposition of said Ellinwood, except as is otherwise admitted herein." Now, while Ellinwood testified that the survey of 1871 did not pass through ranges 14 and 15, west, and the agreed stipulation of the parties is, that the said survey continued on through the county of Barton, which includes ranges 14 and 15, the contradiction between the testimony and stipulation is not very great, in view of the fact that according to the subsequent testimony of Ellinwood, some changes were made in the original location of the route in Barton county, but they were of an unimportant character. Therefore we may construe his testimony upon this point to mean that there was no independent line of survey through said ranges 14 and 15 in 1871, and that such new survey in 1871 made only slight changes in said ranges, and did not destroy the definite location of 1870. Virtually, the surveys in Barton county in 1870 and in 1871, if the two surveys were made, were the same. But if we take the maps as our guide in regard to the changes of the

routes of the road through ranges 14 and 15, we cannot say that such changes as appear therefrom are anything more than such as might be required in the actual construction of the road to correct curves. If the argument of counsel for defendant is followed out to its logical results, we must virtually decide that there could be no definite location of the railroad in question, except by the actual construction of its road bed, because it is rarely possible or customary to construct a railroad on the identical survey of its line without making a single change or deviation for any purpose, and such a construction would be unreasonable and also opposed to the meaning given to the terms "of definitely fixing the line or route of a railroad" by the department of the interior. It is held by the ministerial officers of the United States in charge of the public domain, "that the line of route becomes definitely fixed when it is run upon the face of the earth and is adopted by the company." (*Kansas Pacific R. R. Co v. U. P. R. R. Co.*, Copp's Land Laws, 372; *St. Paul & Sioux City R. R. v. Holverson*, id. 384.) This rule seems reasonable and correct. That the company adopted the route of survey of 1870, is proved from the facts that a copy of the location of the route of 1870 was filed by it in the office of the secretary of the interior, January 10, 1871, containing therein the certificate of the president and chief engineer of the plaintiff, showing that said map set forth the actually surveyed route of the railroad of the plaintiff as definitely fixed, in pursuance of a resolution of the board of directors of the plaintiff, passed October 8, 1870; and that said map of location of the line of the road was also filed by it with the governor of the state of Kansas, December 26, 1870, and that the road was afterward constructed through ranges 14 and 15, in Barton county, in substantial compliance with the route set forth on the said map of 1870. As already noted, the changes of route made in 1871, from Newton to Hutchinson, and in the vicinity of Fort Dodge, did not materially affect the route in said ranges, therefore the finding of the court below should have been, that the route of plaintiff's

railroad was definitely fixed in and through Barton county in November, 1870.

Counsel for defendant contend, however, that a finding that the line of the plaintiff's railroad was definitely fixed, November 28, 1870, is not decisive against the claim of defendant. They claim that the defendant having taken possession of and settled upon the land in question before the 28th of November, that his prior possession and settlement was such a homestead settlement as contemplated by congress in the said act of March 3, 1863, to be excepted from the operation of the grant to the railroad company, and therefore the land did not pass to plaintiff by its location of its road in November, 1870. The argument is, that as the defendant was first in time in possession and in commencement of proceedings for the acquisition of the title to the land, and as his said proceedings were regularly followed up, such defendant is deemed first in right. The argument is faulty in this, as the initiation of a homestead right is not possession, settlement or improvement, but an entry of the land at the local land office, and the payment of the fees as prescribed by the act of congress, and as the grant of land to the railroad company in Barton county was rendered certain and specific in November, 1870, by reason of the route of its road being then fixed, and as the defendant did not make any homestead entry of the land till January 11, 1871, it cannot be said that the defendant commenced proceedings for the acquisition of the land till January 11, 1871. Therefore the defendant was not first in time, in a legal point of view, and as a sequence, is not first in right. The initial or inceptive rights of the defendant date from the entry of the land by him in the local land office at Junction City. At such time the rights of the plaintiff had already attached to the land, and it was not subject to homestead entry. The homestead settlement referred to in the act of 1863 as having attached when the lines or routes of the railroads are definitely fixed, is the settlement accompanying and following the homestead entry at the local land office,

2. Homestead settlement, initial right of.

and not the possession or settlement of the applicant prior to the entry. The entry was, therefore, properly canceled by the commissioner of the general land office, May 18, 1872, and thereafter the land duly patented to plaintiff. The homestead acts fully sustain this construction. The law provides that the homestead claimant shall, "upon application to the register of the land office in which he is about to make such entry, make affidavit . . . that he is the head of a family, . . . and that such application is made for his exclusive use and benefit, and that·his entry is made for the purpose of actual settlement and cultivation, and not, either directly or indirectly, for the use or benefit of any other person; and upon filing such affidavit with the register or receiver, on payment of five dollars, when the entry is of not more than eighty acres, and on payment of ten dollars when the entry is for more than eighty acres, he shall thereupon be permitted to enter the amount of land specified." (U. S. Rev. Stat., p. 422, § 2290.)

Section 2291 further provides "that no certificate, however, shall be given or patent issued therefor, until the expiration of *five years from the date of entry*."

Again, section 2293 provides that any person in the military service, whose family is residing on the land, may make the affidavit required before his commanding officer, and the same may be filed by his wife, or other representative of the absentee, with the register, and that *the same shall become effective from the date of such filing, provided the application and affidavit are accompanied by the fee and commissions as required by law;*" and said section 2291 also requires and demands that the person making a homestead entry shall prove by two credible witnesses that he has resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit.

The judgment of the district court will be reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

All the Justices concurring.