CHARLES FEARNS, *et al.*, V. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. SUPREME COURT — *Decision on the Merits.* Where a case is brought to the supreme court, and it appears that amended pleadings may possibly have been filed in the court below which were not brought to the supreme court, but from the whole of the record as brought to the supreme court it can be ascertained what the issues were which were tried in the court below, and what errors, if any, were committed by the court below, *held*, that the supreme court will decide the case upon its merits.

2. HOMESTEAD ENTRY; *Mistake; Correction.* Where a person eligible to procure a homestead under the United States homestead laws settles upon, occupies and makes valuable and lasting improvements on a piece of government land, and attempts to make a homestead entry thereof, but through mistake makes an entry of another piece of land, *held*, that he has obtained such an interest in the land that he may afterward have his homestead entry so corrected as to make it an entry of the piece of land which he had settled upon and intended to enter.

3. RAILROAD COMPANY — *No Interest in Land.* And in such a case, where a railroad company which would be entitled to the land upon definitely locating its railroad opposite thereto, provided the same were still government land and not affected by any homestead or preëmption claim, definitely locates its road opposite the land after the attempted entry thereof, but before the entry is corrected, *held*, that the railroad company obtains no interest in the land.

4. HOMESTEAD — *Possession — Notice of Interest.* Where a person who has settled upon and attempted to make a homestead entry of a piece of government land is in the open, notorious and exclusive possession thereof, claiming the same as his homestead, such possession is sufficient to put all persons upon inquiry, and all persons are bound to take notice of his rights and interests in and to the property.

*Error from Chase District Court.*

ACTION brought by *The Railroad Company* against *Fearns* and another, to recover certain land in Chase county. Trial by the court, at the December Term, 1882, and finding and judgment for plaintiff. The defendants bring the case here. The opinion states the facts.

*Jetmore & Son,* for plaintiffs in error.

*A. A. Hurd, C. N. Sterry,* and *Robert Dunlap,* for defendant in error; *George W. McCrary,* general counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by the Atchison, Topeka & Santa Fé Railroad Company against Elizabeth Fearns, to recover the south half of the southeast quarter of section 21, in township 20 south, of range 8 east, in Chase county. Before the final trial of the case, Elizabeth Fearns died, and the action was revived against her heirs, Charles Fearns and Catherine Gleason. The final trial was by the court, without a jury, and the court, after delivering an opinion in the case, found generally in favor of the plaintiff and against the defendants, and rendered judgment accordingly; and the defendants now bring the case to this court for review.

A preliminary question is raised in this court. It is claimed that amended pleadings were filed in the case; and that they have not been brought to this court, and therefore that this court cannot tell what the issues were in the court below, nor whether the court below committed any material error, or not. We do not think, however, that it sufficiently appears that amended pleadings were filed in the court below, or that the original pleadings were amended further than to substitute Charles Fearns and Catherine Gleason as the defendants, in the place of Elizabeth Fearns, the original defendant. This is as far as the blank amended pleadings found in the record show, and they certainly do not change the original issues in the case. Besides, the case was tried in the court below precisely as though the issues as made by the original pleadings were still the issues in the case. The most of the facts were agreed to, and nearly all the evidence was introduced without objection; and all these facts, and all this evidence, and the opinion of the court below, indicate that the parties on both

sides believed that the issues on the trial were just what they were in fact under the original pleadings; and the original pleadings have been brought to this court, and are now before us.   Besides, it is well known that the pleadings in ejectment do not usually state the facts in detail, but usually state them in the most general terms.   The petition usually alleges, in general terms, ownership and right of possession on the part of the plaintiff, and wrongful detention on the part of the defendant; and the answer is usually a general denial.   It is our opinion that no amendments were made to the original pleadings, further than to substitute the names of the heirs of Mrs. Fearns for her name.   And, entertaining this opinion, as we do, we shall decide the case upon its merits.

The facts of the case appear to be substantially as follows: In 1863, and prior and subsequent thereto, the land in controversy was a portion of the public domain of the United States, subject to homestead entry, preëmption, etc.   In the early part of January, 1868, Patrick Ryan settled upon and occupied the land in controversy, intending to procure the same under the homestead laws of the United States.   Afterward, and on January 13, 1868, he attempted to make a homestead entry of such land, at the United States land office at Salina, but in fact and through mistake made an entry of another piece of land. On June 9, 1869, Lucius Manly filed a declaratory statement for a preëmption entry of the same land which Ryan had intended to enter, alleging a settlement thereon, on January 8, 1869.   On June 30, 1869, the plaintiff railroad company definitely located its railroad opposite the land in controversy, and within less than ten miles thereof, and became entitled to the same under the congressional land grant to the state of Kansas for railroad purposes, of March 3, 1863, (12 U. S. Stat. at Large, 772,) provided the homestead and preëmption entries of Ryan and Manly were both illegal and void; but the railroad company did not become entitled to such land if either of such entries was valid.   Hence the principal question involved in this case is, whether either of such entries was valid, or not.   On July 9, 1869, Ryan filed an affidavit in the

local land office, setting forth that when he filed his homestead application he intended to include therein the tract of land in controversy, but that the same was accidentally omitted from his papers; that he had cultivated and improved the tract named, and that Manly's filing was not in good faith, and asked to be allowed to amend his application. He had, in fact, made lasting and valuable improvements on the land. Upon a hearing between these parties, in September, 1869, Manly's filing was canceled, and Ryan was allowed to amend his entry so as to include the land in controversy. On November 3, 1869, an order of the United States land office withdrawing supposed government lands, including the land in controversy, from market, on account of the said act of congress of March 3, 1863, and the company's definite location of its railroad opposite such lands, was received at the local land office. Ryan continued to occupy the land, and to cultivate and improve the same, up to about June 15, 1870, when he abandoned the same, and on a subsequent contest between himself and A. S. Sharp, in the local land office, it was held that Ryan had abandoned his claim, and his entry was canceled on December 6, 1870. On October 10, 1871, Elizabeth Fearns filed a declaratory statement, alleging settlement on the land on August 13, 1871; and on October 14, 1871, she made a homestead entry for the land. On February 2, 1874, it was held by the commissioner of the general land office that Ryan's entry was not valid at the date of the definite location of the company's railroad, and that such entry did not take the land out of the grant of lands to the state of Kansas for railroad purposes, and therefore that Mrs. Fearns's entry was not valid; and on July 28, 1874, her entry was canceled, and on April 13, 1875, the land was certified to the state of Kansas for the benefit of the said railroad company, and on June 21, 1875, the land was patented by the state of Kansas to the railroad company.

All the foregoing proceedings seem to have been *ex parte*, and at the instance of the railroad company only, and Mrs. Fearns was not a party thereto. Afterward Mrs. Fearns ap-

plied to the local land office for a reinstatement of her homestead entry, and made proof of her compliance with all the provisions of the homestead law, and on August 6, 1877, such application and proof were transmitted to the commissioner of the general land office. Mrs. Fearns made her final proof on September 22, 1877, showing her compliance with the homestead laws, which proof was also transmitted to the general land office. Her application was overruled and rejected by the commissioner of the general land office, on December 6, 1877. The case was then appealed to the secretary of the interior, who, on August 27, 1878, held that Mrs. Fearns's homestead entry was valid, and that she was entitled to the land; holding that Ryan's homestead entry was valid at the time of the definite location of the plaintiff's railroad; holding that although Ryan's entry was defective and for the wrong land when it was first made, yet that subsequently, when the aforesaid amendment was made thereto, changing it to the land in controversy — to the land which he had settled upon and occupied as a homestead, and which he had in fact intended to enter — such amended entry took effect by relation from the date of the original entry of January 13, 1868, and was therefore prior to the railroad company's definite location of its railroad on June 30, 1869; and therefore, under the acts of congress of March 3, 1863, (12 U. S. Stat. at Large, 772,) and April 12, 1876, (19 U. S. Stat. at Large, ch. 72, pp. 35, 36,) the railroad company did not obtain any right to or interest in the land. On March 16, 1880, a patent for the land was issued by the United States to Mrs. Fearns. The opinion of the court below reads as follows:

"This is an action of ejectment, to recover the possession of the south half of southeast quarter of section 21, township 20, range 8 east, in Chase county, Kansas. One Patrick Ryan made an entry on certain lands in Chase county on January 13, 1868, and intended to and supposed he had entered the land in controversy. He made improvements on the land in controversy, and it was not until another party filed upon the land, on June 9, 1869, that Ryan discovered that he had not filed upon the land in question. He at once began proceed-

ings to have his entry corrected before the land courts, and succeeded in having such correction made so as to include the land. This amendment was allowed October 26, 1869. The line of plaintiff's railroad was definitely located through Chase county and along the line of lands to which the land in controversy was contiguous, on the 30th day of June, 1869. At this time the right of plaintiff to lands under its land grant attached to all lands forming a part of the public domain within the ten-mile limit. At this time Ryan had no entry on the land. It was still a part of the public domain. His intention to enter did not sever it from the public domain. On the 30th day of June, 1869, the plaintiff obtained a vested right in the land in controversy. The subsequent proceedings of the land office in correcting the entry of Ryan could not divest the plaintiff of this right. We must therefore find for plaintiff; judgment will be rendered accordingly."

Now, was either Ryan's homestead claim or Manly's pre-emption claim valid and subsisting at the time of the railroad company's definite location of its railroad? If either was valid, we would suppose that the railroad company obtained no rights by virtue of the aforesaid land grants or the definite location of its road, (*A. T. & S. F. Rld. Co. v. Pracht*, 30 Kas. 66, and cases there cited,) and that one or the other was valid (and we think Ryan's) must follow, from the facts proved and agreed upon. And this without reference to the decision of the secretary of the interior, and even if, as a matter of law, the decision had been made the other way. We suppose that it is well settled that the findings of fact made by land officers in a contested case before them must afterward, when relief is sought in the courts, be considered as final and conclusive. (*Tatro v. French*, ante, p. 49, and cases there cited.) But when the land officers misconceive or misconstrue the law arising upon the facts of the case, their decision with respect to the law will not be considered as final or conclusive, and the courts may afterward grant any proper relief. (See authorities above cited, also *Quinby v. Conlan*, 104 U. S. 420.) And the decision of the land officers in an *ex parte* proceeding will not, in any case, be considered as final or conclusive against the parties who were not before them.

We think that Ryan, by settling upon said land and making lasting and valuable improvements thereon, and by attempting in good faith to make a homestead entry thereon, and believing that he had done so, obtained such an interest in equity in and to the land that the subsequent definite location by the railroad company of its road could not divest him of his interest in the land. It was such an equitable interest in the land that he had a right to have his entry thereof amended so as to make it appear to be just what it was intended and believed to be when he made his original entry. The decisions of courts of equity permitting instruments in writing to be reformed so as to make them just what the parties intended that they should be, but which through some mistake of the parties they were not, furnishes great support to this proposition. There ought to be power somewhere to correct mistakes of this kind; and the proper place for such power to be vested is undoubtedly, in the first instance, in the land officers, but finally in the courts. In the present case, the correction was permitted to be made by the local land officers, and their action was sustained by the secretary of the interior, and we think their action should be sustained by the courts. Also, as Ryan was in the open, notorious and exclusive possession of the property, claiming the same as his homestead, such possession was sufficient to put all persons upon inquiry; and all persons were bound to take notice of his rights and interests in and to the property. (*Hughes v. The United States*, 71 U. S. 232.) The railroad company, when it definitely located its road, was bound to know what Ryan's interests were with respect to the land, and to know that in equity he was entitled to the land by virtue of his settlement, his occupancy, his improvements, and his attempted homestead entry ; and being bound to know this, it obtained no interest in the land. (*A. T. & S. F. Rld. Co. v. Pracht*, 30 Kas. 66, and cases there cited.)

This present case is unlike the case of the *A. T. & S. F. Rld. Co. v. Mecklim*, 23 Kas. 167. In that case no attempted entry of any kind was made prior to the definite location of the railroad company's line of road, while in this case there was. In

that case there was no incorrect entry to be corrected or re-formed, while in this case there was. In the present case, when the railroad company, on definitely locating its road, found Ryan in the possession of the property in controversy, *claiming it as his homestead, and claiming to have made an entry thereof at the United States land office, and having in fact made an entry,* though incorrect (all of which the company could have ascertained by inquiry) it should have selected other land in lieu of the land in controversy, as it had an unquestionable right to do under the act of congress granting the lands.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

JOHNSTON, J., concurring.