JOHN EMSLIE, *et al.*, v. MARTHA E. YOUNG.

1. HOMESTEAD ENTRY, *When not Excepted from Grant to Railroad Company.*
A homestead entry made before the definite location of the railroad, but
which had been voluntarily abandoned before such definite location,
although the filing thereof was not canceled until after the location, did
not operate to except the land from the grant to the railroad company
under the provisions of the act of congress of March 3, 1863, donating to
the state of Kansas lands to aid in the construction of certain railroads
and telegraphs.

2. TITLE, *When in Railroad Company; Decision of Land Department, not Con-
clusive.* The land in controversy — a part of an odd-numbered section, and
within the ten-mile grant of land to the A. T. & S. F. Rld. Co., by virtue of
the act of congress of March 3, 1863 — was in 1863 public land open to
homestead settlement; in October, 1863, one R. homesteaded it; in 1868,
he voluntarily abandoned it; in June, 1869, the line of the railroad of
the A. T. & S. F. Rld. Co. was definitely located opposite to this land.
At the time of such definite location the land was abandoned, but the
entry or filing of R.'s homestead was uncanceled; on November 3, 1869,
a withdrawal of lands was made under the act of March 3d, 1863, within
the limits of which withdrawal the land is situate; in May, 1874, the
land was certified to the state of Kansas, and in February, 1875, pat-
ented by the state of Kansas to the railroad company; in October, 1871,
one S. had R.'s entry canceled, and then homesteaded the land himself.
S.'s entry was, on the application of the railroad company, afterward
canceled, but on August 14, 1878, reinstated by the secretary of the inte-
rior, under the provisions of the act of congress of April 21, 1876, and
on April 2, 1879, a patent was issued to S. *Held,* That the title to the
land vested in the railroad company in June, 1869; that the entry of S.
was erroneously reinstated; that the title of the railroad company to the
land could not be disturbed by an act of congress subsequent to June,
1869; and that the decision of the land department awarding the land
to S. in 1878, by a mistake of law, is not conclusive.

*Error from Chase District Court.*

ACTION to quiet title, brought by *Young*, who filed her petition, and the defendants failing to appear, judgment was rendered on the first day of the term in her favor, on the averments of the petition, without any testimony having been introduced to support the same.

The petition (court and title omitted) is as follows:

" The plaintiff states that, on the 21st day of October, 1863, one John W. Randall duly entered upon the following described real estate in Chase county, Kansas, to wit, the southwest quarter of section thirty-three, in township nineteen, range eight, east, for the purpose of making the same his homestead, and on said day duly filed on the same as such homestead, in the United States local land office at Junction City, in the county of Davis, in the state of Kansas, and continued to occupy and improve the same as such homestead, until sometime in the year 1868, at which time he abandoned the same as a homestead, and on the 12th day of October, 1871, upon the information and at the instance of Andrew J. Stainbrook, the said entry of the said Randall was duly canceled by the judgment and order of the United States land office at Washington, D. C., and on the 21st day of November, 1871, the said Andrew J. Stainbrook duly entered upon the said real estate as his homestead, duly filed in the United States local land office at Salina, Saline county, state of Kansas, and continued to occupy, live upon and improve the same as such homestead, until sometime in the month of August, 1876; that, prior to the making of said entry, the said Andrew J. Stainbrook had served in the army of the United States, as a volunter soldier in the late war of the great rebellion, for the term of three years; that on the 30th day of June, 1869, the Atchison, Topeka & Santa Fé railroad was definitely located by the Atchison, Topeka & Santa Fé railroad company through Chase county, Kansas, and by said location the said real estate became within the ten-mile grant of real estate to said company by virtue of an act of congress, entitled 'An act for a grant of lands to the state of Kansas, in alternate sections, to aid in the construction of certain railroads and telegraphs in said state,' approved March 3, 1863, and, in conformity to said act, the notice of withdrawal of the lands within said grant from sale, or home-

stead or preëmption entries, was received at the said local land office on the 3d day of November, 1869, and on the 24th day of September, 1873, the United States land office at Washington, D. C., at the instance of the said railroad company, canceled the entry of the said Stainbrook, upon the ground that the same was in conflict with the rights of said railroad company, acquired by the said act of congress, and the location of the said line of the railroad, and the said notice of withdrawal, and upon no other ground whatever.

"And this plaintiff further alleges, that the cancellation of said Stainbrook's homestead entry by the United States land office was done upon the *ex-parte* application of the said railway company, without any notice whatever to Stainbrook, and without any knowledge on his part of the proceedings. And on the 28th day of May, 1874, the said land was, among others, erroneously certified to the state of Kansas for the benefit of the Atchison, Topeka & Santa Fé railroad company under said act of congress, and subject to all its conditions and to any valid interfering rights which may exist. And on the 8th day of February, 1875, the state of Kansas issued to the Atchison, Topeka & Santa Fé railroad company a patent to said real estate and other lands in the county of Chase along the line of said railroad, in accordance with the act of congress, and subject to all its conditions and to any valid interfering rights which may exist. And on the 22d day of April, 1879, the said patent was filed for record in the office of the register of deeds of Chase county, and was by him recorded in book I of the records of deeds of said county, on page 568. And on May 20, 1874, the Atchison, Topeka & Santa Fé railroad company executed, acknowledged and delivered to the defendant Goss a warranty deed for the said real estate, which deed was filed for record in the office of the register of deeds of Chase county, on the 22d day of March, 1876, and was by him recorded in book G of the records of deeds of that county, on page 625. And on the 3d day of February, 1877, the said Goss executed, acknowledged and delivered to the defendant John Emslie a warranty deed for said real estate, which deed was, on the 6th day of February, 1877, filed for record in the office of the register of deeds of Chase county, and was by him recorded in book H of the records of deeds of said county, on page 366. And on the 6th day of February, 1877, the defendants John Emslie and Jane Emslie executed, acknowledged and delivered to the defendant Goss a mortgage on the said real estate to

secure the payment of the sum of $1,180, by the said John Emslie to the said Goss; that on the 7th day of February, 1877, the mortgage was filed for record in the office of said register of deeds, and was by him recorded in book B of mortgages of Chase county, on page 339; that on the 15th day of August, 1876, the said Andrew J. Stainbrook commenced a proceeding by making application to the local land office at Salina, in Saline county, Kansas, the same being the local land office of the district in which the said real estate is situated, to have his entry reinstated, his application being made under and by virtue of an act of congress entitled 'An act to confirm preëmptions and homestead entries within the limits of railroad grants, in cases where such entries have been made under the regulations of the land department,' which act was approved April 21, 1876; and on the 19th day of November, 1877, the said application was rejected by the commissioner of the general land office at Washington, D. C., and from said refusal Stainbrook duly appealed to the secretary of the interior; and on the 14th day of August, 1878, the secretary of the interior reversed the rejection and reinstated the homestead entry. And thereafter, to wit, on the 2d day of April, 1879, by virtue of the aforesaid proceedings by Andrew J. Stainbrook, he duly obtained a patent for the said real estate from the United States, a copy of which patent is attached to and made a part of this petition, and marked 'Exhibit A' for identity, and here referred to as a part hereof; that on the 2d day of May, 1879, the said Andrew J. Stainbrook and Lucy A. Stainbrook his wife duly executed, acknowledged and delivered to this plaintiff a warranty deed for the following portion of said real estate, to wit: the north half of southwest quarter of section thirty-three, township nineteen, range eight, east; and by virtue thereof this plaintiff is now the owner in fee simple, clear of incumbrances, and in possession of the following above-described real estate, to wit: the north half of the southwest quarter of section 33, township 19, range 8, east, in Chase county, Kansas; that the defendant Jane Emslie is the wife of the defendant John Emslie, and by reason of the patent from the state of Kansas to the railroad company, and the deed from the railroad company to the said Goss, and the deed from the defendant Goss to the defendant John Emslie, and the mortgage from the defendant John Emslie and Jane Emslie, his wife, to the defendant Goss, having all been executed and recorded as aforesaid, the deed from the defendant Goss

to the defendant John Emslie and the record thereof, and the mortgage from the defendant John Emslie and Jane Emslie, his wife, to the defendant Goss and the record thereof, and each and all of them, are clouds upon this plaintiff's title to the real estate deeded to her by Andrew J. Stainbrook and Lucy A. Stainbrook, his wife, as aforesaid; and the said John Emslie claims that, by virtue of the deed from Goss to him as aforesaid, he is the owner of the said real estate; and Jane Emslie claims that the said John Emslie is the owner of said real estate, and by reason of her being his wife, that she has an inchoate interest therein; and the said Goss claims that, by virtue of the mortgage from John Emslie and Jane Emslie to him of the aforesaid real estate, that he has a lien thereon for the payment of the sum for which the mortgage was given as aforesaid.

"Wherefore, this plaintiff prays that the deed from the said Goss to John Emslie of the aforesaid real estate, and the mortgage from the said John Emslie and Jane Emslie to the said real estate, may each and both be canceled and set aside and held for naught, so far as this plaintiff's portion of the said real estate, to wit, the north half of the southwest quarter of section 33, township 19, range 8, east, is concerned; and that this plaintiff's title to the last-above described real estate be forever quieted against each and all of the defendants, and that each and all and every one of the defendants be forever enjoined from asserting or claiming any right or title or interest whatever in the last above-described real estate, or any part thereof. And this plaintiff further prays for any and all such other and further relief in the premises as may be equitable, proper, and just."

EXHIBIT A.

HOMESTEAD CERTIFICATE No. 4,060; APPLICATION 11,913.

*United States of America, to all to whom these presents shall come—Greeting:*

*Whereas,* There has been deposited in the general land office of the United States a certificate of the register of the land office at Salina, Kansas, whereby it appears that, pursuant to the act of congress approved 20th May, 1862, to secure homesteads to actual settlers on the public domain, and the acts supplemental thereto, the claim of Andrew J. Stainbrook has been established and duly consummated, in conformity to law, under act of 21st April, 1876, for the southwest quarter of section 33, in township 19, south, of range 8, east, in the district of lands subject to sale at Salina, Kansas, containing one hundred and sixty acres, according to the official plat of the survey of said land returned to the general land office by the surveyor general, the said tract was, on the 28th day of May, 1874, certified to the state of Kansas, for the benefit of the Atchison, Topeka & Santa Fé railroad company:

Now, therefore, know ye, that there is granted by the United States unto

the said Andrew J. Stainbrook, the tract of land above described, to have and to hold the said tract of land, with all the appurtenances thereof, unto the said Andrew J. Stainbrook and to his heirs and assigns forever, the aforesaid certificate to the state of Kansas, to the contrary notwithstanding.

In testimony whereof, I, Rutherford B. Hayes, president of the United States of America, have caused these letters to be made patent and the seal of the general land office to be hereunto affixed.

Given under my hand, at the city of Washington, the twenty-second day of April, in the year of our Lord one thousand eight hundred and seventy-nine, and of the independence of the United States the one hundred and third.                    R. B. HAYES.

By W. H. COOK, *Secretary.*

A summons was served on Jane Emslie personally, and on N. S. Goss and John Emslie by leaving duly-certified copies thereof at their usual place of residence.  On the first day of the term, May 4, 1880, judgment was rendered in accordance with the prayer of the foregoing petition.

Eight days thereafter, at the same term of court, the defendants appeared in said cause, and made the following motion (court and title omitted):

"The defendants and each of them move the court to set aside and vacate the judgment, order and decree rendered herein at this term; to grant a new trial herein; to permit and allow the defendants to answer upon the payment of all costs, or on such terms as may be proper.

"1. That the judgment of the court is not sustained by sufficient evidence.

"2. That the judgment of the court is contrary to law.

"3. Error of law occurring at the trial, and apparent of record.

"4. Irregularity in the proceedings of the court, in this, that the said cause was not set for trial, but a default was taken on the first day of the term.

"5. That no evidence was heard on the trial thereof.

"6. For the reason that there was no sufficient summons or service thereof issued or served against defendant Goss.

"7. For reasons appearing in the affidavit of Joseph G. Waters, this day filed herein, and which will be read.
                    "J. G. WATERS, *Attorney for Defendants.*"

The affidavit referred to is as follows (court and title omitted):

"Joseph G. Waters, being first sworn, on his oath says: That he is an attorney for defendants in the above action; that the

47—24 KAS.

Emslie v. Young.

defendants and each of them have a valid and meritorious defense to the plaintiff's cause of action; that the defendant John Emslie is the owner of the land sued on; that he paid the full value of the land to N. S. Goss, the defendant herein, and executed back to him a mortgage; that upon the service of summons on him, John Emslie, he did not understand its meaning, and, expecting the defendant Goss would attend to the matter, failed to appear and defend; that he, the said John Emslie, as a matter of fact, did not know or understand that there was a suit in court to be tried until some one told him on the street that there was such a case, and that judgment had been rendered against him; that he, the said Emslie, desires to file an answer, and is willing to pay all the costs; that the said N. S. Goss is an unmarried man, and has been absent from Woodson county, Kansas, before, at the time and continuously since the service of summons herein, as shown by the summons of the sheriff of Woodson county; that he has been absent from the state of Kansas and the United States during said time; that he has had no personal or actual knowledge of the pendency of this suit; that S. P. Young wrote to said Goss at Neosho Falls a letter, before the pendency of this suit, informing him that he would in a short time institute such a suit, and asking him if he would enter his appearance therein; that the said Goss forwarded said letter to Ross Burns and this affiant, with instructions to enter his appearance or not, as the said Burns and this affiant pleased; that since said time the said Goss has had no personal or actual knowledge of the pendency of this suit, or of the proceedings had therein; that he has not such knowledge now; that the said Goss has a good defense to said action; that John Emslie is the owner of said land, and said Goss has an unpaid mortgage thereon, as stated in plaintiff's petition; that he asks for leave to answer *instanter*, and is ready and willing to pay all costs and go to trial at once.

"JOSEPH G. WATERS.

"Subscribed and sworn to before me, this 12th day of May, 1880. P. J. NORTON, *Clerk District Court.*"

On the day last aforesaid the motion and affidavit were read, and there being no other testimony offered on either side, the court *pro forma* overruled the motion; to which ruling the defendants excepted, and have brought the case here for review.

*Ross Burns,* for plaintiffs in error.

*Carswell & Sanders,* and *S. P. Young,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Passing over the questions of practice and the matters of minor importance presented for our determination, we reach the principal subject of controversy, which is, does the petition sustain the judgment? The judgment is based wholly upon the averments of the petition, and if the petition does not state facts sufficient to constitute a cause of action, the judgment must be reversed.

The facts, as shown by the petition, are briefly these: The land in controversy was, in 1863, public land, open to homestead settlement. In October, 1863, one Randall homesteaded it, and in 1868 he abandoned it. In June, 1869, the line of the railroad of the Atchison, Topeka & Santa Fé railroad company was definitely located opposite to the land, which is within four miles of such located line, and is an odd-numbered section. At the time of such definite location the land was abandoned, but the entry of Randall's homestead was uncanceled. On November 3, 1869, a withdrawal of lands was made, within the limits of which withdrawal this land is situate. In May, 1874, this land was certified to the state of Kansas, and in February, 1875, patented by the state to the railroad company. In October, 1871, one Stainbrook had Randall's entry canceled, and he himself homesteaded the land; but his entry was, on the application of the railroad company, afterward canceled, and was only reinstated under the act of Congress of April 21, 1876. Stainbrook obtained a patent and sold to Young, who brought this suit. The act of Congress is referred to in the petition. By this act there was granted to the state of Kansas, in trust for the Atchison, Topeka & Santa Fé railroad company, for the purpose of aiding in the construction of its railroad, every alternate section of land, designated by odd numbers, for ten

sections in width on each side of said road, and it was therein provided that in case the United States have, when the lines of said road are definitely fixed, sold any section or any part thereof granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected for the purpose aforesaid, from the public lands of the United States, so much land in alternate sections, designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved or otherwise appropriated, or to which the rights of preëmption or homestead settlement have attached as aforesaid.

In the case of the *L. L. & G. Rld. Co. v. United States*, 2 Otto, 741, the court, construing this act, says: "It creates an immediate interest, and does not indicate a purpose to give in future. 'There be and is hereby granted' are words of absolute donation, and import a grant *in præsenti*. This court has held that they can have no other meaning; and the land department, on this interpretation of them, has uniformly administered every previous similar grant. They vest a present title in the state of Kansas, though a survey of lands and a location of the road are necessary to give precision to it, and attach it to any particular tract. The grant becomes certain, and by relation has the same effect upon the selected parcels as if it had specifically described them. In other words, the grant was a float until the line of the road should be definitely fixed." There is, therefore, only one question to be considered. Upon the definite location of the line of the railroad of the Atchison, Topeka & Santa Fé railroad company, under the act of congress of March 3, 1863, did the grant attach to an odd-numbered section within the ten-mile limit, upon which there was an abandoned but uncanceled homestead entry? The line of the road was definitely located June 30, 1869. At that date there was no valid subsisting homestead entry upon the land. It is true Randall had made a homestead filing on October 21, 1863,

but he had, in 1868, abandoned the land as a homestead, and as no subsequent entry or filing was made prior to the time the line of the road was definitely fixed, the land belonged to the railroad company, as no valid or *bona fide* homestead claim then existed or attached.   The right of Randall having been by him forfeited voluntarily, his claim had lapsed, and did not exist.   At the time of the location, there was no person who could hold or exercise any claim under the entry or filing of Randall, and therefore there was no subsisting claim capable of being perfected.

It is urged, however, that the claim of Randall, although abandoned before the location of the road, yet, because it was then uncanceled, had sufficient force and validity to take the land from the railroad company.   In brief, that a forfeited and abandoned homestead claim, simply uncanceled upon the books of the land office, has the like effect to exclude land from the railroad grant as a subsisting valid homestead claim, capable of being perfected and of ripening into an absolute title.   Such an interpretation of the act of 1863 is not sustained by the letter or spirit of the statute.   The act does not speak of entries or filings as excepting lands from the operation of the grant, but of rights — the right of preëmption and homestead.   The spirit of the act was to protect preëmption and homestead settlers, having valid and subsisting rights at the time the grant became certain.   It was not the intention of congress, by the exceptions in the act, to exclude lands from the grant upon fraudulent or forfeited entries or filings.   In our opinion, the land having been abandoned as a homestead claim when the route of the road was fixed, no right of homestead settlement attached to the land, within the meaning of the act, at the date of the location of the road; and that at such location the grant attached to the land, notwithstanding the non-cancellation of the homestead filing of Randall.   This conclusion leads us to decide that the land in controversy belonged to the railroad company on May 20, 1874, when the deed was executed to N. S. Goss, and that the defendant, John Emslie, is the owner of the land, subject to the mort-

gage lien of his grantor. (*A. T. & S. F. Rld. Co. v. Catlin,* Copp's Pub. Land Laws No. 411, p. 394; *Western Pacific Rld. Co. v. Spratt,* id. No. 428, p. 416; *Sayre v. A. T. & S. F. Rld. Co.,* id. No. 414, p. 397; *M. K. & T. Rld. Co. v. Block,* id. No. 412, p. 395.)

The rulings of the land department have not been uniform in its interpretation of the act of 1863, or other similar grants. The decisions of the land department until the Boyd case, April 28, 1871, (2 Lester's Land Laws, 26,) were without exception, that upon the abandonment of an entry by a preëmptor or a homesteader, if the land was within a grant made subsequent to the entry abandoned, the land fell to the grant, and this in accordance with the rules of law touching the devolution of estates. In the Boyd case, the rule of decision was there explained to be, in an opinion of the assistant attorney general, approved by the secretary, that, "there having been a subsisting homestead on the land when the rights of the railroad company attached, on the subsequent abandonment of the homestead, the land reverted to the government, and not to the company; and therefore it was, at the date of Boyd's application to file for it under the preëmption laws, subject to such application, and his filing should have been allowed." This decision was, in May, 1872, modified in an opinion of the assistant attorney general, made in the case of *Starkweather v. A. T. & S. F. Rld. Co.,* and approved by the secretary. It states that "the homestead entry, in order to exclude the land filed on from the granted indemnity limits, should be a valid and *bona fide* homestead claim at the time the line of the road is definitely fixed. (*A. T. & S. F. Rld. Co. v. Catlin,* supra.) This was followed by a decision made in August, 1872, in the case of *Railroad Co. v. Svenson and Thurston,* as follows: "The act of 1857 exempts from the grant, in place of lands to which the right of preëmption has attached at the date of the location of the road, and by the settled construction of this department the same rule applies to indemnity selections. I understand the phrase, 'right of preëmption has attached,' to mean not only a right

of preëmption which had at some previous time attached, but also such a right as was subsisting at the date of the location of the road." In the Spratt case, *supra*, it was decided that "a preëmption claim may be defined to be a right or interest subsisting under the preëmption law, in some person, to a tract of public land, which by a further full compliance with the law may be ripened into a perfect title. It is essential in a *bona fide* preëmption claim that it subsist in some person, and that it be capable of being perfected." ( *M. K. & T. Rld. Co. v. Block*, supra.

In the case of Sayre, *supra*, (1873,) it was decided, that a homestead entry, made before the definite location of the road, but which had been relinquished in writing before such definite location, although the entry was not canceled until after location, did not take the land from the railroad. In February, 1877, it was decided, in the case of *Thomas v. Railroad Co.*, that "lands situated within the limits of a road above indicated, covered by homestead entries at the date of the granting act, which entries are subsequently canceled, are excepted from the operations of the grant." Under many of the decisions of the land department, prior to the passage of the act of congress of April 21, 1876, confirming preëmption and homestead entries on public lands within the limits of railroad grants, it would seem that the entry of Stainbrook would have been held erroneous. Upon his appeal from the decision of the commissioner of the general land office, refusing to reinstate his homestead entry, the secretary of the interior reversed the decision of his subordinate, upon the ground that the application of reinstatement was made under the act of 1876. Upon this point the secretary says:

" The tract in question was covered by a homestead entry, valid at its inception, and uncanceled at the time the grant became effective; hence, under the ruling established by my predecessor in the case of Chalkley Thomas, the same would have been excepted from the operation of said grant, and subject to appropriation by Stainbrook. His entry was canceled, however, under a ruling of the land department in force at the date of adjudication, and on that point must be consid-

ered *res adjudicata*, and if the application had been based'
upon that ground, it must have been rejected.   The applica-
tion, however, was made under .the provisions of the act of
April 21, 1876, and was based upon the ground of an entry
allowed under the rulings of the land department, and has
been adjudicated in accordance therewith.   In the adjudica-
tion of the application under the act above mentioned, the
rule established in the Thomas case, viz., that an unimpeached
homestead entry will be considered valid until canceled, will
be followed."

The decisions of the land department, having been so va-
rious, changeable and conflicting relative to the interpretation
of the land grants of congress and the rights of preëmption
and homestead settlers thereunder, cannot greatly guide us
in reaching the true construction of the statute; much less
can we regard such decisions as conclusive, or the decision of
the secretary of the interior, in this case, as *res adjudicata*.
Further, we think the reinstatement of the Stainbrook entry
under the provisions of the act of 1876 was a mistake of
law, as the title of the railroad company vested in the partic-
ular tract on June 30, 1869, by the route of the road being
then definitely fixed.   This vested title could not be disturbed
by a subsequent act of congress. (*A. T. & S. F. Rld. Co. v.
Bobb*, ante, p. 673; *Minter v. Crommelin*, 18 How. 87; *Reichart
v. Felps*, 6 Wall. 160; *Morton v. Nebraska*, 21 Wall. 660–675;
*Marquez v. Frisbie*, 101 U. S. 473.)

. The judgment of the district court will be reversed, and
the case remanded for further proceedings in accordance with
the views herein stated.

All the Justices concurring.