MARTHA E. YOUNG *et al.* v. N. S. GOSS.

1. LAND GRANT *to Railroad — Abandoned Homestead, not Excepted.* A homestead entry made before the definite location of the railroad, but which had been voluntarily abandoned before such definite location, although the filing thereof was not canceled until after the location, did not operate to except the land from the grant to the railroad company under the provisions of the act of congress of March 3, 1863, donating to the state of Kansas lands to aid in the construction of certain railroads and telegraphs. (*Emslie v. Young*, 24 Kas. 732.)

2. CASE, *Distinguished.* K. P. Rly. Co. v. Dunmeyer, 113 U. S. 629, cited, and distinguished.

*Error from Chase District Court.*

THIS action was tried at the June term, 1887, of the district court. The following statement of facts was agreed to by *N. S. Goss,* as plaintiff, and *Martha E. Young,* S. P. Young and Phebe M. Boynton, as defendants:

"1. This is an action by N. S. Goss to foreclose a mortgage made to him by John Emslie and Jane Emslie his wife, on the southwest quarter of section 33, township 19, range 8 east, in Chase county. None of these defendants were parties to the making of said mortgage, nor had any knowledge of its being made until long after it was recorded in the office of the register of deeds of Chase county.

"2. John Emslie claims ownership and title to the southwest quarter of section 33, township 19, range 8 east, through the act of congress granting lands to the state of Kansas to aid in the construction of the Atchison, Topeka & Santa Fé railroad, and for other purposes, approved March 3, 1863.

" 3. Martha E. Young claims ownership of and title to the north half, and Phebe M. Boynton claims ownership of and title to the south half, of the southwest quarter of section 33, township 19, range 8 east, through the homestead entry thereof by Andrew J. Stainbrook, made under the act of congress to secure homesteads to actual settlers on the public domain, approved May 20, 1862, and amendments thereto.

" 4. October 21, 1863, in full compliance with law, John W. Randall made his homestead entry No. 396, on southwest quarter of section 33, township 19, range 8 east, in Chase county, and complied with all the requirements of the homestead laws of congress until August 7, 1868, when he abandoned the land, and under the complaint filed by Andrew J. Stainbrook a hearing was had at the local land office at Salina, Kansas, August 7, 1871, when it was shown that Randall had abandoned said tract of land three years previously, and the homestead entry of John W. Randall on said tract of land was canceled October 12, 1871, for failure to complete the same.

" 5. November 21, 1871, under the rulings and decisions of the officers of the U. S. land department, Andrew J. Stainbrook made his homestead entry No. 11,913, on said southwest quarter of section 33, township 19, range 8 east.

" 6. September 24, 1873, on the application of the A. T. & S. F. Railroad Company, made by N. S. Goss, its then attorney, and now plaintiff in above-entitled action, by an *ex parte* proceeding without notice to Andrew J. Stainbrook, and without any knowledge on his part that said proceedings had been instituted or were being had, the commissioner of the general land office declared Andrew J. Stainbrook's homestead entry on said tract of land canceled for pretended conflict with the grant of lands to the state of Kansas to aid in the construction of said railroad, and for other purposes, approved March 3, 1863.

" 7. May 28, 1874, said southwest quarter of section 33, township 19, range 8 east, was certified to the state of Kansas for the benefit of the Atchison, Topeka & Santa Fé Railroad, under the act of congress approved March 3, 1863, and subject to all its conditions and to any valid interfering rights that may exist.

" 8. February 8, 1875, the state of Kansas issued its patent for said tract of land to the A. T. & S. F. Railroad Company with the same conditions, viz., under the act of congress, ap-

proved March 3, 1863, and subject to all the conditions and to any valid interfering rights that may exist.

"9. May 20, 1874, the A. T. & S. F. Rld. Co. made its warranty deed to said tract of land to N. S. Goss, its then attorney, now plaintiff in this action, for the consideration of $1.

"10. February 3, 1877, N. S. Goss made his warranty deed for said land to John Emslie, and February 6, 1877, John Emslie and Jane Emslie his wife made their mortgage on said land to N. S. Goss to secure the payment of the notes sued on in this action given by Emslie to Goss, for the purchase-money of said tract of land by Emslie from Goss.

"11. October 14, 1878, the secretary of the interior by his decision of that date, under the application of Andrew J. Stainbrook duly made and prosecuted after due notice to said A. T. & S. F. Rld. Co., and under the act of congress approved April 21, 1876, reinstated said Stainbrook's said homestead entry on said tract of land; and Stainbrook having filed his final proof in compliance with the requirements of the homestead laws of congress on his part, a patent was in due form issued to him for said tract of land, of date April 22, 1879.

"12. May 2, 1879, for a valuable consideration, Andrew J. Stainbrook and Lucy A. Stainbrook his wife duly made their warranty deed for the north half of the southwest quarter of section 33, township 19, range 8 east, to Martha E. Young.

"13. August 18, 1879, Andrew J. Stainbrook and Lucy A. Stainbrook his wife for a valuable consideration duly made their warranty deed for the south half of the southwest quarter of section 33, township 19, range 8 east, to this defendant, Phebe M. Boynton.

"14. The southwest quarter of section 33, township 19, range 8 east, is within the ten-mile limit of the line or route of the A. T. & S. F. Rld., and the line or route of said railroad was definitely located through Chase county, Kansas, and opposite said tract of land, June 30, 1869, and notice of withdrawal from the market of all lands within the ten-mile limits to which the company's right had attached at definite location of line or route of road was received at the local land office November 3, 1869."

The court found generally for the plaintiff, and rendered judgment for him, adjudging the mortgage of plaintiff to be a first lien upon the land in question. The defendants, complaining of that judgment, bring the case here for review.

*S. P. Young, O. A. Bassett,* and *Douthitt, Jones & Mason,* for plaintiffs in error.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for defendant in error.

Opinion by HOLT, C.: The title to this tract of land has been litigated before. Martha E. Young brought her action to quiet her title to a part thereof, in the Chase district court; at the first day of the May term, 1880, a judgment was rendered in her favor on default. This judgment was afterward reversed in this court, (*Emslie v. Young,* 24 Kas. 732), for the reason that the petition did not state a cause of action. The allegations of the petition were substantially the same as the facts agreed upon in this action, so far as they relate to the title of Martha E. Young to the land in dispute. Usually the rule laid down in that case would be the one we should be guided by in our investigation and determination of the issues in this action. Chief Justice HORTON, delivering the opinion in that case, said:

"It is urged, however, that the claim of Randall, although abandoned before the location of the road, yet, because it was then uncanceled, had sufficient force and validity to take the land from the railroad company. In brief, that a forfeited and abandoned homestead claim, simply uncanceled upon the books of the land office, has the like effect to exclude land from the railroad grant as a subsisting valid homestead claim, capable of being perfected and of ripening into an absolute title. Such an interpretation of the act of 1863 is not sustained by the letter or the spirit of the statute. The act does not speak of entries or filings excepting lands from the operation of the grant, but of rights—the rights of preëmption and homestead. The spirit of the act was to protect preëmption and homestead settlers, having valid and subsisting rights at the time the grant became certain. It was not the intention of congress, by the exceptions in the act, to exclude lands from the grant upon fraudulent or forfeited entries or filings. In our opinion, the land having been abandoned as a homestead claim when the route of the road was fixed, no right of homestead settlement attached to the land, within the meaning of

the act, at the date of the location of the road; and that at such location the grant attached to the land, notwithstanding the non-cancellation of the homestead filing of Randall. This conclusion leads us to decide that the land in controversy belonged to the railroad company on May 20, 1874, when the deed was executed to N. S. Goss, and that the defendant, John Emslie, is the owner of the land, subject to the mortgage lien of his grantor."

The defendants contend, however, that the supreme court of the United States, in the case of *K. P. Rly. Co. v. Dunmeyer*, 113 U. S. 629, have laid down a rule of law different from that enunciated by this court in *Emslie v. Young*. The language used in *K. P. Rly. Co. v. Dunmeyer* might be construed to sustain the contention of defendants, but the facts in that case are unlike the facts in this. It appears from the record in that case, that one Miller made a homestead entry on a quarter-section of land in Saline county, on the 25th day of July, 1866; on the 11th of the same month the Union Pacific Railway Company, Kansas Division, which is the branch now called the Kansas Pacific Railway Company, filed its map showing the general line of its road, and the land was withdrawn from preëmption, private entry and sale, on the 26th of July, the next day after the plaintiff had made his homestead entry. The company claimed title to the land under two acts of congress, granting the land to the Union Pacific Railway Company and branches, namely, the act of 1862, and amendatory act of July 2, 1864, and the act of July 3, 1866. The land was situate within the limits of the land so granted. In 1871 Miller's homestead entry was canceled. The court held that the land in dispute was not a part of the grant to the railroad company, for the reason that Miller's homestead right had attached thereto before it was withdrawn from preëmption, private entry, and sale.

There is this distinction between the facts in that case and this: Miller's homestead entry at the time of the withdrawal of the lands was a valid and existing right which might have ripened into a title; in this case, the homestead entry of Randall had been abandoned nearly a year before the line of the

road had been located, and a year before the land was withdrawn from sale. Now we believe that if the entry of Randall had been canceled before the 30th of June, when the railroad company acquired its interest in the land, that this quarter-section would have reverted to the government, and thereby been within the purview of the grant to the company. The rule would not have been different, we think, when the land had been actually abandoned, though the entry of Randall had not been declared canceled at the local land office. From the agreed statement of facts in this case, Randall had no existing rights under his own entry on the 30th day of June, 1869, and therefore this land was embraced in the grant of the government to the railroad company.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.