THE ATCHISON, TOPEKA & SANTA FÉ RLD. CO. V. AARON
BOBB.

LINE OF RAILROAD, *Definitely Fixed; Land not to be Pre-empted.* The
plaintiff was a beneficiary of the grant made by the act of congress of
March 3d, 1863, granting lands to the state of Kansas to aid in the con-
struction of certain railroads. The line of its road was definitely located
and fixed in and through the county of Rice on December 10th, 1870;
but no order was made by the secretary of the interior withdrawing
lands along such line from sale and the operation of the homestead and
preëmption laws, until February 13th, 1871. *Held,* That the title passed
on December 10th, 1870, and that a settlement by defendant on a tract of
land within the limits of the grant, made between December 10th, 1870,
and February 13th, 1871, gave to the latter no right to homestead or
preëmpt the land.

### *Error from Rice District Court.*

EJECTMENT, brought by the *A. T. & S. F. Rld. Co.* against
*Bobb,* to recover a certain quarter-section of land situated in
Rice county. Trial at the February Term, 1880, of the dis-
trict court, and judgment for the defendant. The opinion
states the facts.

*Ross Burns,* for plaintiff in error.

*J. H. Smith, W. R. Brown,* and *H. J. Abbott,* for defendant
in error.

The opinion of the court was delivered by

BREWER, J.: This case was tried in the court below, on
the following agreed statement of facts, dated June 3, 1879,
and signed by the attorneys for the parties hereto:

"It is agreed by and between the plaintiff and defendant
in the above-entitled cause, that the same may be tried at the
June term, 1879, by the court, without a jury, and in all other
courts wherever or whenever the same may be heard or tried,
by appeal, review, or otherwise, upon the following agreed
statement of facts, and none other:

"I. The plaintiff is, and was at all the times hereinafter
alleged, a railroad corporation, duly created and organized un-
der the laws of the state of Kansas.

43 — 24 KAS.

"II. That, as such railroad corporation, it was a beneficiary under the certain act of the congress of the United States, entitled 'An act for a grant of lands in the state of Kansas, in alternate sections, to aid in the construction of certain railroads and telegraphs in said state,' approved March 3, 1863, and the act of the legislature of the state of Kansas, entitled 'An act to accept a grant of lands made to the state of Kansas by the congress of the United States, to aid in the construction of certain railroads and telegraphs in said state, and to apply the same to the construction of such roads and telegraphs,' approved February 9, 1864, and which acts, and each of them, as they are and appear in the statute book, are hereby referred to and made a part of this agreed statement of facts.

"III. That the plaintiff duly accepted the provisions of said acts, and did proceed with the construction and completion of its road in accordance therewith.

"IV. That the land in dispute is the southeast quarter of section seven (7), in township twenty (20), south, of range eight (8), west, in the county of Rice, in the state of Kansas.

"V. That the definite location of the line of plaintiff's railroad in and through the county of Rice, and at and opposite to said land, was made, and the proper surveys, maps and profiles made and filed, and such definite location of the plaintiff's line of railroad aforesaid approved by the proper officers, as contemplated by the before-mentioned acts, on the 10th day of December, 1870.

"VI. That on the 23d day of January, 1871, the defendant, with his family, made actual settlement on said land, in good faith, intending to take the same under the preëmption laws of the United States.

"VII. That on the 30th day of January, 1871, the defendant duly filed his declaratory statement to obtain said land as a preëmption, and has at all times since then fully complied with all the preëmption laws of the United States concerning said land.

"VIII. That on the 13th day of February, 1871, this land, along with other lands, was withdrawn by the secretary of the interior, and in pursuance of the aforementioned acts, from sale, and from the operation of the homestead and preemption laws of the United States.

"IX. That in a contest had by and between the plaintiff and defendant before the interior department, it was finally decided by the secretary of the interior that the defendant's

filing on said land as a preëmption claim as aforesaid should be canceled, and that the said land inured to the plaintiff under and by virtue of its said land grant, and that in pursuance of said decision, on the 29th day of June, 1872, the filing of the defendant was canceled, and the land conveyed by patent to the plaintiff, and that ever since that time the plaintiff has been the holder of the legal title thereto; (and by the phrase 'legal title' is meant the title conveyed by the patent, the defendant in nowise admitting that the plaintiff was or is rightfully the holder of the legal title, or the rightful owner of the land.)

"X. That on the 23d day of December, 1872, the line of the plaintiff's railroad was fully constructed and completed, as required by the aforesaid act of congress and the act of the legislature of the state of Kansas.

"XI. That on the 17th day of November, 1876, the defendant made proper application to the proper officers to make final proof, under the preëmption laws, to obtain this land under said laws, under the provisions of the act of the congress of the United States, entitled 'An act to confirm preëmption and homestead entries of public lands within the limits of railroad grants where such entries have been made under the regulations of the land department,' approved April 21, 1876; which act, as the same appears and reads in the statute book, is hereby referred to and made a part of this agreed statement of facts.

"XII. That on the 28th day of November, 1876, the proper officer of the interior department authorized and allowed the defendant to make final proof under his application above mentioned.

"XIII. That on the 28th day of November, 1876, the defendant did duly make final proof under the preëmption laws in order to obtain this land, before the proper officer, and has at all times, and in everything, and at the proper time, complied with the requirements of the preëmption laws of the United States.

"XIV. That under the authority, decision and direction of the commissioner of the general land office, the defendant was permitted to enter, under the provisions of the last-mentioned act of congress, approved April 21, 1876, the land herein described; and that the defendant made final proof and payment for the land, and obtained the final receipt of the receiver of the land office therefor.

"XV. That an appeal was taken by the plaintiff from the

order and decision of the said commissioner, permitting the defendant to enter the land as a preëmption, and that the same was finally decided by the interior department and the secretary thereof, on the 9th day of March, 1878, in favor of the defendant, on the ground that 'the first section of said act, approved April 21, 1876, provides that all preëmption entries made on the public lands in good faith, by actual settlers, upon tracts of not more than one hundred and sixty acres within the limits of any land grant, prior to the time when notice of the withdrawal of the lands embraced in such grant was received at the local land office in which such lands are situated, and where the preëmption laws have been complied with and proper proofs have been made by the parties holding such tracts, shall be confirmed, and patents for the same shall issue to the parties entitled thereto. As the filing of Bobb was prior to the time when notice of the withdrawal of this tract was received at the local office, and he has complied with the requirements of law, I am of opinion that (notwithstanding my predecessor held Bobb's filing for cancellation June 29, 1872, and awarded the tract to the railroad company, for the reason that it inured to it under its grant prior to Bobb's settlement, and it has been patented to the railroad company) the case of Bobb is within the provisions of the said act, as I decided on the 7th of February last, in the case of Streeter, under a similar state of facts. I therefore affirm your decision,' as appears in the letter of the secretary of the interior department to the commissioner of the general land office.

"XVI. That in case the court on the foregoing facts shall find the law to be for the plaintiff, the judgment of the court shall generally be for the plaintiff, and for the possession of the land, and for costs of suit; and if for the defendant, the judgment shall be against the plaintiff, and in favor of defendant for costs."

Judgment was rendered in favor of the defendant, and the plaintiff brings the case to this court for review.

The single question is, whether the title of the plaintiff vested at the time of the definite location of its road, or not until the lands were formally withdrawn from sale by the order of the secretary of the interior. If the former, this land became and was the property of the plaintiff before defendant moved upon it. This is no open question. Under the

act of congress of March 3, 1863, (12 U. S. Stat., p. 772,)
a present grant of lands was made to the state of Kansas, of
which the railroad became the beneficiary; in and by which act
every alternate section of land, designated by odd numbers,
for ten sections in width on each side of the road intended
to be benefited, were then granted to the state for such
road.   But, in case it should "appear that the United States
have, when the lines or routes of said road and branches are
definitely fixed, sold any section or any part thereof granted
as aforesaid, or that the right of preëmption or homestead
settlement has attached to the same," then other lands may
be selected.   In this case the road had been definitely located,
and nothing then stood in the way to prevent its right from
attaching to this land.   Some time after, the defendant in
error made a settlement on the land, and filed his declaratory
statement for the purpose of taking it under the preëmption
laws.

The supreme court of the United States has decided, when
passing upon similar grants, that, just so soon as the route of
the road became definitely fixed, at that time the grant be-
came a certainty, and the alternate sections of odd-numbered
lands within ten miles of the line as definitely fixed, at once
attached to the grant and vested in the company.   As long
ago as 1817, the supreme court, in construing a grant of lands
made to General Nathaniel Greene, was unanimously of the
opinion that the act vested a title in General Greene, and that
the survey afterward made gave precision to that title and
attached it to the lands surveyed.   (*Rutherford v. Greene's
Heirs,* 2 Wheat. 196.)   In the case of *Railroad Co. v. Fre-
mont County,* 9 Wall. 94, the court says: "Until the line of
the railroad was definitely fixed upon the ground, there could
be no certainty as to the particular sections of land falling
within the grant; nor could the title to any particular section
on the line of the road vest in the company.   The grant was
in the nature of a float until this line was permanently fixed."
Again, in the case of *Railroad Co. v. Smith,* 9 Wall. 97:
"The grants of lands by congress to the states, in aid of rail-

roads, have generally been made with reference to the lands through which the roads were to pass, and as the line of the road had to be located after the grant was made, it has been usual in the acts making the grants to describe them as alternate sections of odd numbers, within a certain limit on each side of the road when it should be located. This, of course, left it to be determined by the location of the road what precise lands were granted. So far as this uncertainty in the grant was concerned, it was one which might remain for a considerable time, but which was capable of being made certain, and was made certain by the location of the road." And again, in the case of *Schulenberg v. Harriman*, 21 Wall. 60: "It is true that the route of the railroad for the construction of which the grant was made, was yet to be designated, and until such designation the title did not attach to any specific tracts of land. The title passed to the sections to be afterward located; when the route was fixed their location became certain; and the title, which was previously imperfect, acquired precision, and became attached to the land." And in the case of *L. L. & G. Rld. Co. v. United States*, 2 Otto, 741, the court, construing this very act under which plaintiff claims, says: "It creates an immediate interest, and does not indicate a purpose to give in future. 'There be and is hereby granted,' are words of absolute donation, and import a grant *in præsenti*. This court has held that they could have no other meaning; and the land department on this interpretation of them has uniformly administered every previous similar grant. They vest a present title in the state of Kansas, though a survey of the lands and a location of the road are necessary to give precision to it, and attach it to any particular tract. The grant then becomes certain, and by relation has the same effect upon the selected parcels as if it had specifically described them. In other words, the grant was a float until the line of the road should be definitely fixed."

It seems idle to add anything to these citations from the decisions of the United States supreme court, which cover the very point, and are upon a question whose final determina-

tion rests with that court. Neither does it seem necessary to add that a different construction of the law in the land office, or by the secretary of the interior, in no manner affects the plaintiff's title, nor can that title be disturbed by a subsequent act of congress.

The judgment of the district court will be reversed, and the case remanded with instructions to render judgment upon the agreed statement, in favor of the plaintiff in error, for possession of the land and costs of the suit.

All the Justices concurring.