THE KANSAS PACIFIC RLY. CO. v. LEWIS DUNMEYER.

1. GRANTEE, *not Estopped from Questioning Title, etc.* The mere acceptance of a deed by one in occupation of land, does not estop the grantee from questioning the title conveyed by that deed, or from suing on the covenants for failure of title, and this, notwithstanding such grantee had, at the time of receiving the deed, himself a preëmption right to the land. Such acceptance is not of itself proof of the settlement and compromise of a controversy.

2. TITLE BY PATENT, *Paramount to that by Land Grant.* July 25, 1866, M. made a homestead entry of a tract of land. On July 11, 1866, the railroad company, one of the companies named in the act of congress of July 2, 1862, filed its map, showing the general line of its road. On July 14, the commissioner of the general land office wrote to the local land officers, advising them of the filing of this map, and directing the withdrawal of the lands along the line of the road, in accordance with the provisions of the act of congress of July 3, 1866. This letter was received July 26, 1866, and the same day the entries were made of the withdrawal. The land upon which M. had filed was in an odd-numbered section within the limits of this withdrawal. Afterward, the road was built, and on December 17, 1869, M. purchased from the railroad company, and took a certificate of purchase, which after one or two assignments passed into the hands of the plaintiff, and was by him surrendered to the company, and a deed taken. April 28, 1871, M.'s homestead entry was canceled; but in October, 1871, D. made a new

homestead entry. A contest was had before the land officers between D. and the railroad company, which was decided by the commissioner of the land office in favor of D. The company not appealing, the decision was made final, and a patent issued to D. *Held*, That the title conveyed by the patent to D. was paramount to any title passed to the company by its land grant.

*Error from Saline District Court.*

ACTION brought by *Dunmeyer* against the *Kansas Pacific Railway Company*, to recover damages because of his ouster from a certain tract of land, to which the defendant had, in consideration of $200, executed to him a warranty deed. Trial by the court at the November Term, 1879, when the court found for the plaintiff, and assessed his damages at $326.45, and costs. New trial denied, and judgment accordingly for the plaintiff. The defendant brings the case to this court. Other facts appear in the opinion.

*J. P. Usher*, and *Charles Monroe*, for plaintiff in error.

*John Foster*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This case has once been in this court, and is reported in 19 Kas. 539. A judgment against the railroad company was then reversed, and the case remanded for a new trial. Subsequently, the petition was amended to conform to the views expressed in the opinion then filed, and a second trial was had, resulting again in a judgment against the railroad company. This second judgment is now challenged by the plaintiff in error.

Two principal questions are presented, which are all we deem it necessary to notice. It may be premised that the main facts appear now as they did when the case was here before.

The first proposition of counsel is, that the plaintiff is estopped from asserting that the title acquired from the government by G. B. Dunmeyer, and purchased by him, is paramount to that acquired by him from the defendant. This

proposition is rested upon the doctrine of the effect of a compromise of disputed rights, as laid down by this court in the case of the *A. T. & S. F. Rld. Co. v. Starkweather*, 21 Kas. 322. But compromise implies controversy. None appears here. The mere purchase of a title and acceptance of a deed are not necessarily a compromise, the settlement of a controversy, even though the party receiving the deed have at the time himself a different claim. In the Starkweather case, it appeared that the parties had a controversy; that this controversy was litigated in the land department of the United States, and decided adversely to Starkweather; that then, being out of funds and unable to carry on the litigation in another forum, and to prevent a sale by the railroad company, he went to the company and purchased. By that he settled and compromised a pending controversy, and we held that he was bound by that settlement. In the opinion we referred to some cases in which the mere acceptance of a deed was held to estop from questioning the title apparently conveyed thereby, but expressed our dissent from the extreme views of those cases. Those cases are cited by counsel, and the contention is that the case at bar is stronger than any of them, and more within the scope of the reasoning in the Starkweather case. We cannot concur with counsel. The record before us fails to show any controversy between Miller, the original purchaser from the company, and the company. It simply shows that, having an occupation of the land which might be the foundation of a title by preëmption or homestead, he suffered that to go by default and purchased from the company. He never contested with it the question of superior title. In fact he had no title. He had a prior right to purchase or acquire title by occupation from the government; but that is all. Instead of purchasing from the government, he bought from the company. And this, not by way of closing any litigation or settling any controversy, but doubtless because he then thought that the company had title to convey. The company never attempted to disturb his possession; never,

save in the mere act of receiving money and issuing a deed, asserted any claim to the land. In other words, before any controversy arose he purchased. Now unless the mere acceptance of a deed and payment for the title conveyed thereby is proof of a controversy and the settlement of it, this case shows no controversy or compromise.

Further, Miller, the original purchaser from the company, is not now a party in interest. He assigned his certificate of purchase, and after one or two assignments it passed into the hands of plaintiff, who surrendered the certificate and took a deed. In other words, plaintiff, not an original occupant of the land, and without, so far as appears, actual knowledge that there was ever any preëmption or homestead right thereto, finds a party holding a contract of purchase from the defendant, and buys that evidence of title. That title, thus contracted for, and afterward conveyed by defendant, fails, and a paramount title is yielded to and purchased. It is not Miller's paramount title that was yielded to, but the government's. Miller never had title, and by abandoning the land he lost the right to acquire title. He had nothing to convey, and he gave no warranty. The defendant warranted, but had no title. It warranted to plaintiff, and not to Miller. Miller's conduct neither bettered nor injured defendant's claim of title. Being on the tract with the intention of homesteading it at the time defendant's grant attached, this tract never passed to the company. Whether Miller abandoned it or continued his occupation, was immaterial. Defendant's title to lands within the strip is of a fixed date. At that date the alternate sections "not sold, reserved or otherwise disposed of by the United States, and to which a preëmption or homestead claim may not have attached," were identified. The title dates from the date of the grant, but the identification is of the time the line is definitely fixed. Then the float attached to the particular lands and the grant became as definite as though the various sections had been particularly named. The float ceased. The grant was exhausted. The

lands were designated. The company took and could take nothing more, no matter what change in title or condition of other lands might thereafter arise. The excepted lands did not and were not in any contingency to become its property. "The grant then becomes certain, and by relation has the same effect upon the selected parcels as if it had specifically described them. In other words, the grant was a float until the line of the road should be definitely fixed." (*M. K. & T. Rly. Co. v. K. P. Rly. Co.*, 97 U. S. 491.) "And these lands being within the terms of the proviso, as we construe it, it follows that they are absolutely and conditionally excepted from the grant; and it makes no difference whether or not they subsequently became a part of the public lands of the country." (*L. L. & G. Rld. Co. v. U. S.*, 92 U. S. 733.) So that whether Miller maintained or abandoned his homestead entry and occupation after the time that the line of defendant's road was definitely fixed, in no manner affected its rights to the land.

The other contention of counsel is, that in fact the company did have the title. The facts are, that on July 25, 1866, Miller made a homestead entry of the land. On the 3d of July, 1866, an act of congress was passed, providing for the filing of a map of the general line of its road by the company defendant, and that "upon the filing of said map, showing the general route of said road, the lands along the entire line thereof, so far as the same may be designated, shall be reserved from sale, by order of the secretary of the interior." This act was but an extension of the right conferred by the original act of 1862, in which it was provided, that upon the filing of the map of the general route, "the secretary of the interior shall cause the lands within fifteen miles of said designated route or routes to be withdrawn from preemption, private entry and sale." (12 U. S. Stat., p. 493, § 7.) On July 11th, the company filed its map. On July 14th, the commissioner of the general land office wrote to the local land officers to withdraw the lands from sale, homestead and preëmption entry, which communication was received by them

on July 26th, and on that day the proper entries were made upon their maps and plats to indicate such withdrawal. The line of defendant's road along and adjacent to this land was not definitely fixed until September 21, 1866. On December 17, 1869, Miller purchased from the company, and took a certificate of purchase. On April 28, 1871, Miller's homestead entry was canceled. On October 16, 1871, G. B. Dunmeyer made a homestead entry. A contest arose before the land office between him and the company, which was decided by the commissioners in favor of Dunmeyer, and no appeal being taken to the secretary of the interior, the decision was made final, and a patent issued to him. Now it is claimed, that by the filing of the map, the lands were withdrawn from market, and that no homestead or preëmption right could thereafter attach. Hence, Miller's homestead entry was void, and the title passed by the grant to the company. We are inclined to think this view not correct. The lands are to be reserved from sale, by order of the secretary of the interior, or, in the language of the prior act, he is to cause them to be withdrawn from sale, etc. This, it would seem, contemplates some act by the department, and until that act was completed, the withdrawal was not made. No formal order of the secretary is shown. The only thing is the letter from the commissioner to the local land officers, and their action thereon. The land was then in fact withdrawn. Perhaps the order of the secretary, if one was made, was to take effect upon the receipt by the local land officers of the notice and letter from the commissioner. If so, it would seem to be within the scope of his powers. And in the absence of other showing, this action of the subordinates of the secretary of the interior must be taken as in fact the order of the secretary. The language concerning withdrawals differs from that respecting the grant. The latter is, "that there be and is hereby granted," etc. It is absolute, depending on the action of no officer, and takes effect upon the passage of the act. (97 U. S. 491.) The other casts a duty upon an officer of

the government.   It does not provide that the lands shall be withdrawn upon the filing of the map, and by virtue of that act alone, but that the secretary shall cause them to be withdrawn when that map is filed.   In other words, a duty is cast upon him, and on the performance of that duty the withdrawal is complete.   That duty, so far as the record here shows, was completed on July 26th, and that is therefore to be taken as the date of the withdrawal.   In the case of the *K. P. Rly. Co. v. M. K. & T. Rly. Co.*, in this and the supreme court of the United States, it seems to have been an unquestioned fact that July 26th was the date of the withdrawal. (15·Kas. 20; 97 U. S. 491.)   True, that date was not one of moment perhaps in that case, and the expression in the opinion of the two courts concludes no one.   Still, it serves to show the general understanding of the scope and effect of the statute concerning withdrawals.   The rulings of the land department of the United States have not been uniform, it is believed, upon this question, and congress attempted, by act of April 21, 1876, (U. S. Stat. 1876, p. 35,) to put an end to dispute.   That act is in harmony with the conclusions reached by us.

It should also be noticed that the company litigated with Dunmeyer his right to homestead before the land office, and it was defeated in that litigation.   That decision, if based upon the construction of a statute or a question of law, may not be conclusive, but so far as it determines a fact, it is, except in case of fraud, etc.   (*Johnson v. Towsley*, 13 Wall. 72.)   The record before us does not clearly and fully disclose the ground of the decision.   The simple conclusion of the contest is about all that appears.   The company's grant is spoken of as taking effect March 3, 1869.   Upon what facts that conclusion is based, nothing in the record before us shows.   It may, however, be conceded that probably the decision was based upon a construction of the statute upon undisputed facts.   We do not rest our judgment upon that decision, but refer to it as an opinion in harmony with our own.   While the question, it must be conceded, is doubtful, we think the

ruling of the district court was correct, and that the title conveyed by the patent to Dunmeyer was in fact paramount to that of the company.

We notice no other questions of importance which were not in the case when here before and then considered.

The judgment will be affirmed.

All the Justices concurring.