THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. WILLIAM ROCKWOOD.

1. LAND GRANT TO RAILROAD COMPANY; *When Title Attached.* A certain piece of land in Chase county, Kansas, was on March 3, 1863, and subsequently, (except for the facts hereafter stated,) a part of the public lands of the United States, and was a part of the lands granted by the acts of March 3, 1863, (12 U. S. Stat. at Large, p.772,) and July 26, 1866, (14 U. S. Stat. at Large, p. 289.) It was situated within ten miles of the line of the road of the Atchison, Topeka & Santa Fé railroad company, one of the beneficiaries of the first grant, and within twenty miles, but not within ten miles, of the line of the road of the Missouri, Kansas & Texas railway company, the beneficiary of the other grant. On December 3, 1866, the line of the M. K. & T. Rly. Co. was definitely located, while the line of the A. T. & S. F. Rld. Co. was not definitely located until March 8, 1869. But the land was never *selected* by or for the M. K. & T. Rly. Co.; but on the contrary, the M. K. & T. Rly. Co. united with the A. T. & S. F. Rld. Co. in asking that the secretary of the interior should certify the land to the state of Kansas for the benefit of the A. T. & S. F. Rld. Co., which the secretary afterward did. *Held,* That the M. K. & T. Rly. Co. never obtained any interest in this specific piece of land; that, although said grants were *in præsenti,* yet they did not attach to any specific piece of land until the line of the road of the beneficiary railroad company was definitely located; and not then to the indemnity lands, which were situated more than ten miles and less than twenty miles from the railroad, but only to such lands when they were *selected* for such beneficiary at the instance and under the supervision of the secretary of the interior.

2. WITHDRAWAL OF LANDS, *Effect of.* On April 3, 1867, the secretary of the interior, in accordance with said act of July 26, 1866, and for the benefit of said M. K. & T. Rly. Co., withdrew from market a large amount of land, including the specific piece of land now in controversy. *Held,* That this withdrawal did not of itself and alone affect any right

or interest of the A. T. & S. F. Rld Co. in and to any lands within its grant. The withdrawal was simply intended to prevent persons who had no interest in the lands, or no interest prior to that of the Missouri, Kansas & Texas railway company, from acquiring any such interest, and not to prevent persons who did have some interest in the lands prior to that of the Missouri, Kansas & Texas railway company (as the Atchison, Topeka & Santa Fé railroad company had) from perfecting such interest. And further, *held*, that this withdrawal did not prevent the A. T. & S. F. Rld. Co. from definitely locating its road and taking title to all lands situated within ten miles of its road, and coming within the terms of its grant.

3. TITLE OF RAILROAD COMPANY, *Paramount to that of Preëmptor.* After both of said grants had been made, after the lines of both of said railroads had been definitely located, after the lands, including this specific piece of land, had been twice withdrawn from market, from sale and preëmption, once being withdrawn in favor of the M. K. & T. Rly. Co., and once, to wit, on November 3, 1869, being withdrawn in favor of the A. T. & S. F. Rld. Co., R. then, to wit, on June 22, 1871, settled upon the land as a preëmptor. Afterward both the A. T. & S. F. Rld. Co. and R. perfected their titles and obtained patents for the land; the A. T. & S. F. Rld. Co. from the state of Kansas, and R. from the United States. *Held,* That the title of the A. T. & S. F. Rld. Co. is paramount to that of R., and R. being in possession of the land, the railroad company is entitled to recover the same from him.

### *Error from Chase District Court.*

EJECTMENT, brought by the *Atchison, Topeka & Santa Fé Railroad Company* against *Rockwood,* for the recovery of the northeast quarter of section 31, in township 19, south, of range 8, east, in Chase county. Trial, and judgment for the defendant, at the May Term, 1880, of the district court. The plaintiff brings the case here. A statement of facts appears in the opinion.

*Ross Burns,* for plaintiff in error.
*W. S. Romigh,* and *Sterry & Sedgwick,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of ejectment, brought by the Atchison, Topeka & Santa Fé railroad company against William Rockwood, for the recovery of a certain piece

of land. The case was tried on an agreed statement of facts, and judgment was rendered in favor of Rockwood. The railroad company now brings the case to this court, and asks for a reversal of said judgment.

On March 3, 1863, an act of congress was passed, granting lands to the state of Kansas to aid in the construction of certain railroads therein designated. (12 U. S. Stat. at Large, p. 772.) The land in controversy was at that time and before a part of the public lands of the United States, and is a part of the lands intended to be granted by said act, and is situated within ten miles of the railroad of the plaintiff in error. This act grants every alternate odd-numbered section of land within ten miles on each side of the railroad. This is the extent of the grant; but to make up for any deficiency in the lands thus granted, the act also provides that, "in case it shall appear that the United States have, when the lines or routes of said road and branches are definitely fixed, sold any section, or any part thereof, granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, *or that the same has been reserved by the United States for any purpose whatever*, then it shall be the duty of the secretary of the interior to cause to be selected for the purposes aforesaid from the public lands of the United States," in alternate odd-numbered sections, other lands, not further than twenty miles from the line of said road, sufficient to make up the deficiency. On February 9, 1864, the state of Kansas accepted this grant, and made the plaintiff in error the beneficiary thereof for all lands granted on the route from "Atchison *via* Topeka to the western line of said state, in the direction of Fort Union and Santa Fé, New Mexico, with a branch from where said road crosses the Neosho down said Neosho Valley," etc. (Laws of 1864, p. 150, § 3.) On March 19, 1866, the plaintiff in error and the Union Pacific railway company, southern branch, (a then existing corporation, of which the Missouri, Kansas & Texas railway company is the successor,) entered into an agreement by which the plaintiff transferred to the Union Pacific railway com-

<span style="float:left">Statement of facts.</span>

pany, southern branch, all its right to build a railroad down the Neosho valley, together with all its interests in and to the lands granted to it to build its branch down the Neosho valley. This agreement was approved and ratified by the proper authority.

On July 26th, 1866, an act of congress was passed, granting lands to the state of Kansas to aid in the construction of the southern branch of the Union Pacific railway from Fort Riley, Kansas, toward Fort Smith, Arkansas, down the Neosho valley to the southern line of the state. (14 U. S. Stat. at Large, p. 289.) This act grants five alternate odd-numbered sections on each side of the railroad per mile. It contains the same provisions, substantially, for supplying a deficiency in the lands granted, as is mentioned in the act of 1863. It also contains this further proviso:

"*Provided*, That any and all lands heretofore reserved to the United States by any act of congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or other purpose whatever, be and the same are hereby reserved and excepted from the operation of this act, except so far as it may be found necessary to locate the route of said road through such reserved lands, in which case the right of way, two hundred feet in width, is hereby granted, subject to the approval of the president of the United States."

Section 4 of the act made it the duty of the secretary of the interior to withdraw from the market "the lands granted by this act," upon the company's filing a map of its line, designating the route of its road.

On December 3, 1866, the Union Pacific railway company, southern branch, made a definite location of its line of road, opposite to the land in controversy, and on April 3, 1867, the secretary of the interior withdrew from market a large amount of land, including the land in controversy, for the benefit of said Union Pacific railway company, southern branch. The land in controversy was not within ten miles of the definite location of the road of the Union Pacific rail-

way company, southern branch, but was within twenty miles of the line of such road.

On March 8, 1869, the plaintiff in error located the line of its road opposite the land in controversy; and on November 3, 1869, the secretary of the interior, by a letter dated October 23, 1869, withdrew from market, in favor of the plaintiff in error, a large amount of land, including the land in controversy. This land was situated within ten miles of the plaintiff's road.

On June 22, 1871, the defendant in error settled upon the land in controversy, as a preëmptor. On May 16, 1872, the commissioner of the general land office directed the officers of the local land office to cancel the entry and preëmption of the defendant, on the ground that the land had, before its entry, inured, under the provisions of the first-mentioned land grant, to the plaintiff in error; but through mistake, (and without knowledge of this order on the part of the defendant,) the local land officers permitted the defendant, on the 19th day of June, 1872, to complete his preëmption. The plaintiff in error fully completed its line of road to the western boundary of the state on December 23, 1872. The other road was also completed within proper time, in accordance with the provisions of the act of congress of July 26, 1866. In January, 1873, the Missouri, Kansas & Texas railway company (successor of the Union Pacific railway company, southern branch) and the plaintiff in error entered into an agreement with each other, by which it was agreed that the land in controversy, along with other lands, should be certified by the secretary of the interior to the state of Kansas for the benefit of the plaintiff in error. About this time, and on January 21, 1873, the Missouri, Kansas & Texas railway company selected its lands, more than ten miles from the line of its road, to make up for deficiencies in the amounts which it received within ten miles of the line of its road. It did not then select, and never selected, the land in controversy, which land has never been selected for it by anyone else. On November 11, 1873, the secretary of the interior certified the land in controversy,

along with other lands, to the state of Kansas for the benefit of the plaintiff in error, as the plaintiff in error and the Missouri, Kansas & Texas railway company had previously agreed that he should. On December 16, 1873, this land was patented by the state of Kansas to the plaintiff in error. The entry of the defendant was not in fact canceled until February 5, 1875, at which time it was canceled, as ordered by the commissioner of the general land office. In 1878 said cancellation was set aside, and the entry of the defendant was reinstated, and a patent for the land was issued to him by the United States. The defendant has remained in the actual possession of the land from the time he first settled upon it in June, 1871, up to the present time.

Upon these facts, the court below held that the plaintiff was not entitled to recover, and rendered judgment in favor of the defendant for costs.

We think under the foregoing facts that the Missouri, Kansas & Texas railway company never obtained any interest in the land in controversy. And where we use the name

1. Land grant to railroad company; when title attached.

"Missouri, Kansas & Texas railway company," we shall mean to include the company, not only under that name, but also under its former name of "the Union Pacific railway company, southern branch." The grant under which the Missouri, Kansas & Texas railway company received its lands was more than three years subsequent to the grant under which the plaintiff in error claims the land in controversy; and this subsequent grant, by the proviso already quoted, excepted from the grant all lands which had been previously granted or reserved. Hence the Missouri, Kansas & Texas railway company, as against the plaintiff in error, could claim nothing from the grant alone, independent of all subsequent transactions; and we think no subsequent transactions have been had which could give such railway company any claim to the property in controversy, as against the plaintiff in error. It is true the Missouri, Kansas & Texas railway company definitely located its line of road first; but the land in controversy was not sit-

uated within ten miles of the line of its road; and hence such definite location did not have the effect to give to it any interest in the land. In order to give such company any interest in lands situated more than ten miles from the line of its road, as the land in controversy was and is, three things at least were necessary:

1. It was necessary that the road should be definitely located.

2. It was also necessary that there should be a deficiency in the amount of land which the railroad company received within the ten-mile limit.

3. And it was also necessary, in order to give it any interest in any specific lands beyond the ten-mile limit, that such lands should be *selected* for it at the instance and under the supervision of the secretary of the interior. (See § 1 of said act of 1866, and *Ryan v. Rld. Co.*, 99 U. S. 386.)

Now, while the company did definitely locate its road, and while there was a deficiency in the amount of land which it received within the ten-mile limit, yet the land in controversy was never selected for the Missouri, Kansas & Texas railway company; and the company never asked that any such selection should be made, but on the contrary, it asked that such land should be certified to the state of Kansas for the benefit of the plaintiff in error. The Missouri, Kansas & Texas railway company never claimed any interest in the land in controversy, and does not now claim any such interest, and we are satisfied that it never had any interest therein.

But the main question is, has the plaintiff in error ever obtained any interest in the land in controversy? It must be admitted that it has, unless the withdrawal of the land from market by the secretary of the interior, on April 3, 1867, had the effect to prevent the plaintiff in error from acquiring any such interest. The defendant in error claims that this withdrawal had such effect. He claims that it had such effect by virtue of the words, "or that the same has been reserved by the United States for any purpose whatever," found in the first section of the grant of 1863. This with-

drawal of the land in controversy, and of all other lands situated more than ten miles from the line of the road of the Missouri, Kansas & Texas railway company, was for the purpose that such company might select lands to make up any deficiency of lands received by it within the ten-mile limit.

We shall suppose that the secretary of the interior had the right at this time, and for such purpose, to withdraw lands which were more than ten miles from the line of the Missouri, Kansas & Texas railway company's road, as well as to withdraw lands which were within ten miles of the road; and that, after such withdrawal, the Missouri, Kansas & Texas railway company had the right to select from such lands, so as to obtain a priority in right to the lands thus selected over the plaintiff in error — though this is questionable.   But the Missouri, Kansas & Texas railway company never did select, nor have selected, the land in controversy; hence the company never obtained, by selection, any interest in such land, and hence this land was left as though no such withdrawal had ever taken place.   It does not appear from the record, or elsewhere, that the secretary of the interior attempted to withdraw these lands so as to affect any right or interest of the plaintiff in error.   That portion of the agreed statement of facts concerning this subject, which really gives us all the information we have concerning the matter, reads as follows:

"21. That on the 3d day of April, 1867, the secretary of the interior, in accordance with the provision of said act of congress, approved July 26, 1866, and which said act, as it appears in the statutes of the United States, is made a part of this agreement, withdrew from market, for the purpose of securing the same in order to carry out the purpose and provisions in said last-mentioned act, stated and recited and in accordance therewith, all the lands which were at that time lands belonging to the United States, and which were situated within twenty miles from the located line of said railroad of said Union Pacific railway company, southern branch, except the even-numbered sections, in the first ten miles of the said line of road."

The withdrawal was simply intended to prevent persons who had no interest in the lands, or no interest prior to that of the Missouri, Kansas & Texas railway company, from acquiring any such interest, and not to prevent persons who did have some interest in the lands, prior to that of the Missouri, Kansas & Texas railway company, (as the plaintiff in error in this case had,) from perfecting such interest. The withdrawal was strictly under the provisions of the grant of 1866, as appears from that portion of the agreed facts above quoted; and that grant, by its express terms, was to operate in subserviency and subordination to all previous grants and reservations; hence this withdrawal was itself in subserviency and in subordination to the plaintiff's grant. It was not to take away or *reserve* the land in controversy, or other lands like it, from the plaintiff in error, and it did not and could not affect any interest which the plaintiff had or might obtain in and to the lands. We do not wish, however, to say (or to express any opinion upon the subject), that if the Missouri, Kansas & Texas railway company had selected this land before the plaintiff in error had definitely located its road, that the plaintiff in error would then have had the right to take the land. We only wish to say that the withdrawal did not operate to prevent the plaintiff from receiving and procuring any lands belonging to the United States, and otherwise subject to the plaintiff's grant, which had not yet been selected by the Missouri, Kansas & Texas railway company. We think that such lands were subject to the plaintiff's grant the same as though no such withdrawal had ever been had. It does not appear that the withdrawal was intended to affect the plaintiff's grant. According to the decisions made by the supreme court of the United States, and followed by this court, these grants were *in præsenti,* creating an immediate interest in the lands granted. (*Leavenworth &c. Rld. Co. v. United States,* 92 U. S. 733; *Missouri &c. Rld. Co. v. K. P. Rly. Co.,* 97 U. S. 491; *A. T. & S. F. Rld. Co. v. Bobb,* 24

*2. Withdrawal of lands, effect of.*

Kas. 673; *Emslie v. Young,* 24 Kas. 732; *K. P. Rly. Co. v. Dunmeyer,* 24 Kas. 725.)

There were other things necessary to be done, however, before the grants attached to any definite or specific piece of land, and in all these things the plaintiff in error has priority over the Missouri, Kansas & Texas railway company. The grant itself to the plaintiff in error was anterior and prior to that of the Missouri, Kansas & Texas railway company; and the plaintiff in error, by the definite location of its road, (the land in controversy being within ten miles of its road,) caused its grant to attach to the specific land in controversy, while the Missouri, Kansas & Texas railway company never did anything to cause its grant to attach to the specific land in controversy.

Just prior to this definite location of the plaintiff's road, the land in controversy was free from any specific appropriation under either grant or to either railroad company, but was subject to both grants. It is possible that the Missouri, Kansas & Texas railway company might at that time have appropriated it to itself by selection, but it did not do so; and the plaintiff in error then appropriated it to itself by definitely locating its road. As soon as the plaintiff in error definitely located its road, the title to this land and all other lands in odd-numbered sections within ten miles of the road, not held by any right paramount to that of the plaintiff, would at once vest in the plaintiff, and by relation would become its property as of the date of the act of 1863. (92 U. S. 748, 749; 97 U. S. 498.)

The defendant certainly has no right to the land in controversy. He took possession thereof after it had been twice withdrawn from market—after it had been withdrawn from

3. Title of railroad company, paramount to that of preemptor.

preëmption entry and sale; after the plaintiff had definitely located its road opposite the land, and after the plaintiff's right to it had fully accrued. We think the plaintiff is legally the owner of the land. Even if some irregularities intervened in obtaining its ownership, still we would hardly think that the defendant could

complain.   Where one of two parties is entitled to a piece of
land, (as one of the two railroads in this case was,) even if
the wrong party should get the land, a third party would
hardly have the right to complain.

Before closing this opinion, we might say that in this state,
as well as elsewhere, the plaintiff in ejectment must recover,
if he recover at all, upon the strength of his own title; but
in this state the plaintiff in ejectment is not required to have
the legal title, or all the title, or a title paramount to the
title of all others, in order to enable him to recover.   All
that is necessary in order to enable him to recover is, that
he shall have some kind of estate in the property in contro-
versy, legal or equitable, and that his title to the property
shall be paramount to that of the defendant.   (*Simpson v. Bo-
ring*, 16 Kas. 248, 251, and cases there cited; *Stout v. Hyatt*,
13 Kas. 232, 241; *O'Brien v. Wetherell*, 14 Kas. 622.)   We
think the plaintiff in this case has that kind of title.

The judgment of the court below will therefore be re-
versed, and cause remanded with the order that judgment be
rendered for the plaintiff.

All the Justices concurring.