THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COM-
PANY V. FREDERICK PRACHT.

HOMESTEAD RIGHT—*Facts Sustaining.* In an action in the nature of
ejectment the following facts appeared: Prior to February 14, 1863,
William Campbell preëmpted a piece of land situated in the same sec-
tion in which the land in controversy is situated. On February 14,
1863, Campbell filed a declaratory preëmption statement for the land in
controversy. On March 3, 1863, an act of congress was passed, granting
lands to the state of Kansas to aid in the construction of certain rail-
roads and telegraphs therein designated, including the Atchison, Topeka
& Santa Fé railroad. (12 U. S. Stat. at Large, 772.) On July 7, 1863,
Campbell commuted his previous preëmption entry into a homestead
entry. On February 9, 1864, the state of Kansas accepted the above-
mentioned land grant. On February 14, 1868, Campbell died, leaving
no widow, but leaving minor children, and having up to that time com-
plied with all the requirements of the law concerning his said entry.
On June 30, 1869, the railroad company's line of road was definitely
located opposite the land in controversy, the land in controversy being
within ten miles of the company's road, and an odd-numbered section,
and subject to the land grant of March 3, 1863, provided it was at the
time of the definite location of the company's road a part of the public
lands of the United States, and not within any of the exceptions men-
tioned in the grant. On November 3, 1869, all the public lands con-
sisting of odd-numbered sections lying within ten miles of the company's
railroad as then definitely located were withdrawn from market, for the
benefit of the railroad company. On June 21, 1871, Campbell's home-
stead entry, which had remained unimpeached up to that time, was then
canceled, on the grounds that it was in conflict with the grant of lands
to the railroad company, and more than seven years had elapsed since
the date of the entry. On November 24, 1871, the commissioner of the
general land office decided that Campbell's entry was valid at the date
of the location of the railroad company's line of road, and that by
virtue of the cancellation of such entry on June 21, 1871, the land in
controversy became public land, subject to homestead entry. On
January 3, 1873, the defendant Pracht made his homestead entry of the
land in controversy. On June 15, 1874, Pracht's homestead entry was
canceled by the commissioner of the general land office, on the grounds
that Campbell's entry was made subsequent to the withdrawal of the
land from market, and that although Campbell died on February 14,
1868, yet his heirs had not up to that time made any effort to complete
their title to the land. On June 20, 1874, the land was awarded by the
United States land department to the railroad company, on condition
that it selected the land and paid all legal fees. On January 30, 1875,

the land was selected by the railroad company in pursuance of such award, and the legal fees were paid. On April 13, 1875, a patent for the land was issued by the United States to the railroad company. On April 17, 1878, Pracht made proof with reference to his homestead entry and settlement, showing that he had fully complied with all the requirements of the law with respect to homestead entries; but such proof was rejected by the government land officers, for the reasons above mentioned. Pracht has been in the possession of the land ever since he made his homestead entry thereof, and is still in the possession of the same, and has made lasting and valuable improvements thereon. Upon these facts the trial court decided that Pracht held the paramount title to the land in controversy, and rendered judgment in favor of Pracht and against the railroad company for the land. *Held,* Not error; that, in Kansas, in an action in the nature of ejectment, or, in other words, in an action for the recovery of real property, the party holding the paramount title is entitled to recover, whether such title be legal or equitable; and *further held,* that the railroad company obtained no right to the land by virtue of the definite location of its road on June 30, 1869, for the reason that at that time the land was subject to the homestead right of Campbell's children; and the company obtained no right to the land by virtue of its selection thereof on January 30, 1875, for the reason, among others, that at that time the land was subject to the homestead right of Pracht.

### *Error from Chase District Court.*

THE nature of the action, and the facts, appear in the opinion. At the May Term, 1882, of the district court, defendant *Pracht* recovered a judgment against the plaintiff *Railroad Company,* which brings it to this court for review.

*George R. Peck, W. C. Campbell,* and *C. N. Sterry,* for plaintiff in error.

*Young & Kelley,* and *Peyton, Sanders & Peyton,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in ejectment, brought by the Atchison, Topeka & Santa Fé railroad company against Frederick Pracht, to recover the real estate hereinafter described. The case was submitted to the district court for decision, upon the following agreed statement of facts:

"1. The Atchison, Topeka & Santa Fé railroad company

is a corporation duly organized under the laws of the state of Kansas, and doing business in the state of Kansas, and owns and operates the Atchison, Topeka & Santa Fé railroad through the state of Kansas.

"2. The Atchison, Topeka & Santa Fé railroad company is entitled to the lands granted to the state of Kansas by act of congress approved March 3, 1863, to aid in the construction of the Atchison, Topeka & Santa Fé railroad, and for other purposes, and is the owner in fee of all lands which passed to the state of Kansas under that grant.

"3. The title to and the right of possession of the S.$\frac{1}{2}$ of S.E.$\frac{1}{4}$ and N.E.$\frac{1}{4}$ of S.E.$\frac{1}{4}$ of section 9, town 19, range 6, east, in Chase county, Kansas, are involved in this action. Frederick Pracht is in actual possession of said tract, and this action is commenced by plaintiff to oust him.

"4. Said tract of land is within the ten-mile limits of the line or route of the Atchison, Topeka & Santa Fé railroad as definitely located, and the line or route of said road was definitely located opposite said tract June 30, 1869, and notice of the withdrawal from market of the lands within such ten-mile limits was received at the local land office November 3, 1869; and all public lands consisting of odd-numbered sections which lie within ten miles of the said railroad as definitely located, were withdrawn on said last-named date for the benefit of said railroad company.

"5. William Campbell, in due form of law, made his homestead entry, No. 304, of date July 7, 1863, commuted from preëmption declaratory statement of February 14, 1863, on said tract of land, which remained unimpeached from its date until June 21, 1871, when it was canceled, on the ground that it was in conflict with the grant of lands to the Atchison, Topeka & Santa Fé railroad company, and that more than seven years had elapsed since the date of the entry.

"6. William Campbell complied with all the requirements of the law under his said entry, from its date to the day of his death, occurring February 14, 1868.

"7. Under the decision of the commissioner of the general land office, of date November 24, 1871, holding that Campbell's entry was valid at date of location of line of road, and that on its cancellation the tract became public land subject to homestead entry, Frederick Pracht made his homestead entry on said tract of land, No. 14,057, on January 3, 1873.

"8. On June 15, 1874, Pracht's homestead entry on said land was canceled by the land commissioner, on the grounds

that William Campbell's entry on said land was made subsequent to the withdrawal for the Atchison, Topeka & Santa Fé railroad company, and for the further reason that . William Campbell died on February 14, 1868, and his heirs having made no effort to complete the title to the land, it must be considered that the claim was abandoned at that date.

"9. On June 20, 1874, this tract of land was awarded to the Atchison, Topeka & Santa. Fé railroad company by the land department, and the local officers at Salina, Kansas, were instructed to allow said company to select the same upon the payment of legal fees; and under this award and instruction said tract was selected by the company, January 30, 1875, and the legal fees were at that time paid, and the land patented to the company April 13, 1875.

"10. Frederick Pracht fully complied with all the requirements of the law under his said homestead entry, and filed his proof of such compliance April 17, 1878, which was rejected by the said department, on the grounds that William Campbell's said homestead entry was made subsequent to the withdrawal for said railroad company, and that it was abandoned upon his death.

"11. William Campbell died February 14, 1868, leaving no widow, but leaving minor children as his heirs, who were at the time residents of the state of Virginia.

"12. At the time William Campbell made his preëmption entry, No. 304, upon the land in controversy, he had previously preëmpted under the preëmption laws of the United States, forty acres of land in the same section, in which the land in controversy is situated; no claim was ever made by said children of Campbell, nor by any one on their behalf, nor by his administrator, to complete said entry.

"It is stipulated that either party may use any of the facts above as herein stated, upon the trial of said cause, so far as they are competent and relevant, and that they are all the facts in the case.

"It is further agreed that the improvements made on said land by Frederick Pracht after his settlement thereon, and before the commencement of this action, are reasonably worth $6,000."

Upon this agreed statement of facts the district court found generally in favor of the defendant and against the plaintiff, and rendered judgment accordingly. The plaintiff afterward

moved for a new trial, which motion was overruled, and the
plaintiff now brings the case to this court for review.

The facts of this case, stated chronologically, are substan-
tially as follows: Prior to February 14, 1863, the said Wil-
liam Campbell preëmpted a piece of land situated in the same
section in which the land in controversy is situated.    On Feb-
ruary 14, 1863, Campbell filed a declaratory preëmption state-
ment for the land in controversy.    On March 3, 1863, the
act of congress was passed, granting lands to the state of
Kansas, to aid in the construction of certain railroads and
telegraphs therein designated, including the Atchison, Topeka
& Santa Fé railroad. (12 U. S. Stat. at Large, 772.)  On July
7, 1863, Campbell made a homestead entry of the land in
controversy, his previous preëmption entry, on February 14,
1863, being commuted to such homestead entry.    On Febru-
ary 9, 1864, the state of Kansas accepted the above-mentioned
land grant.    On February 14, 1868, Campbell died, leaving
no widow, but leaving minor children, and having up to that
time complied with all the requirements of the law concerning
his said entry.    On June 30, 1869, the railroad company's line
of road was definitely located opposite the land in controversy;
the land in controversy being within ten miles of the compa-
ny's road, and an odd-numbered section, and subject to the land
grant of March 3, 1863, provided it was at the time of the defi-
nite location of the company's road a part of the public lands
of the United States, and not within any of the exceptions
mentioned in the grant.    On November 3, 1869, all the pub-
lic lands consisting of odd-numbered sections and lying within
ten miles of the company's railroad as then definitely located
were withdrawn from market, for the benefit of the railroad
company.    On June 21, 1871, Campbell's homestead entry,
which had remained unimpeached up to that time, was then
canceled, on the grounds that it was in conflict with the grant
of lands to the railroad company, and that more than seven
years had elapsed since the date of the entry.    On November
24, 1871, the commissioner of the general land office decided

that Campbell's entry was valid at the date of the location of the railroad company's line of road, and that by virtue of the cancellation of such entry on June 21, 1871, the land in controversy became public land, subject to homestead entry. On January 3, 1873, the defendant, Pracht, made his homestead entry of the land in controversy. On June 15, 1874, Pracht's homestead entry was canceled by the commissioner of the general land office, on the grounds that Campbell's entry was made subsequent to the withdrawal of the land from market, and that although Campbell died on February 14, 1868, yet his heirs had not up to that time made any effort to complete their title to the land. On June 20, 1874, the land was awarded by the United States land department to the railroad company, on condition that it select the land and pay all legal fees. On January 30, 1875, the land was selected by the railroad company in pursuance of such award, and the legal fees were paid. On April 13, 1875, a patent for the land was issued by the United States to the railroad company. On April 17, 1878, Pracht made proof with reference to his homestead entry and settlement, showing that he had fully complied with all the requirements of the law with respect to homestead entries; but such proof was rejected by the government land officers, for the reasons above mentioned. Pracht has been in the possession of the land ever since he made his homestead entry, and is still in possession of the same, and has made lasting and valuable improvements thereon.

Perhaps before proceeding further it would be well to state that in Kansas an action in the nature of ejectment, or, in other words, an action for the recovery of real property, is equitable as well as legal; and that upon the trial in such an action either party may prove any kind of title which he may have, legal or equitable, and that judgment will be rendered in favor of the party holding the paramount title, whether such title be legal or equitable. ( *Simpson v. Boring,* 16 Kas. 248, 251, and cases there cited; *Stout v. Hyatt,* 13 Kas. 232; *A. T. & S. F. Rld. Co. v. Rockwood,* 25 Kas. 302.)

We shall now proceed to consider the case upon its merits. The plaintiff founds its right to recover the land in controversy solely upon the provisions of the act of congress of March 3, 1863, granting lands to the state of Kansas to aid in the construction of certain railroads and telegraphs therein designated, of which the plaintiff's railroad is one of the railroads mentioned. The first section of this act provides among other things that every alternate section of land designated by odd numbers, for ten sections in width on each side of the road to be aided, shall be granted to such road; and it further provides:

"But in case it shall appear that the United States have, when the lines or routes of said road and branches are definitely fixed, sold any section or any part thereof granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected for the purposes aforesaid, from the public lands of the United States nearest to tiers of sections above specified, so much land in alternate sections or parts of sections designated by odd numbers as shall be equal to such lands as the United States have sold, reserved, or otherwise appropriated, or to which the rights of preëmption or homestead settlements have attached as aforesaid."

Now it has uniformly been held under this act and other similar acts, that the grants of lands made by congress for the benefit of railroad companies are *in præsenti,* and that an immediate interest in the lands granted is created by such acts; and that the title to the lands granted attaches to the particular pieces of land granted when the railroad is definitely located opposite to such pieces of land, or when some other act is done, as provided by the statute, for the purpose of designating or selecting the specific lands granted. ( *Leavenworth &c. Rld. Co. v. United States,* 92 U. S. 733; *Missouri &c. Rld. Co. v. K. P. Rly. Co.,* 97 U. S. 491; *Missouri &c. Rld. Co. v. Noyes,* 25 Kas. 340; same case, 5 Am. & Eng. Rld. Cases, 440; *K. P. Rly. Co. v. Dunmeyer,* 24 Kas. 725; same case, 5 Am. & Eng. Rld. Cases, 417; *A.*

*T. & S. F. Rld. Co. v. Bobb,* 24 Kas. 673; same case, 5 Am.
& Eng. Rld. Cases, 412; *Emslie v. Young,* 24 Kas. 732;
same case, 5 Am. & Eng. Rld. Cases, 422; *A. T. & S. F.
Rld. Co. v. Rockwood,* 25 Kas. 292; same case, 5 Am. & Eng.
Rld. Cases, 432.)

It will also be seen from said act that if at the time when
the line of the company's road was definitely located any
right of preëmption or homestead settlement had attached to
any of the odd-numbered sections within ten miles of the
company's road, that such lands were not to be considered as
granted to the railroad company; but in lieu thereof it was
made the duty of the secretary of the interior to cause to be
selected other lands outside of the ten-mile limits, but
within twenty miles of the company's railroad, and these
other lands were to be considered as granted by the act.

Upon the foregoing facts, and statutes, and decisions,
counsel for plaintiff in error state in their brief the question
to be decided in this case, as follows: "Now the only ques-
tion in this case is: Was the land in controversy, at the time
of the definite location of the plaintiff's road, within any of
the reservations mentioned in the grant?"

This, we think, is a fair statement of the question to be
determined in this case. It makes no difference, however, in
the present case, whether the plaintiff's right to the lands
granted within ten miles of its road attached on June 30,
1869, the time when the company's line of road was defi-
nitely located opposite the land in controversy, or on Novem-
ber 3, 1869, the time when the odd-numbered sections of
land in this vicinity were withdrawn from market; for
nothing intervened between these dates to affect the rights of
either party. As before stated, Campbell's preëmption
entry was made on February 14, 1863; the act of congress
under which the plaintiff makes its claim was passed on
March 3, 1863; Campbell's homestead entry and the com-
mutation of his previous preëmption entry were made on
July 7, 1863; Campbell died on July 14, 1868; and the

line of the company's road was definitely located opposite the land in controversy on June 30, 1869.

Now upon these facts, was the homestead right of Campbell an existing right in favor of any person on June 30, 1869, the time when the company's road was definitely located? This is really the only question in the case. The plaintiff claims that no homestead right existed at that time, while the defendant claims the reverse. The defendant intimates, however, that there is still another question in the case. He says that even if no homestead right did exist on June 30, 1869, or November 3, 1869, or at any other time, in favor of any person with reference to this land, still that it was supposed by all parties and the government that from July 7, 1863, up to at least June 21, 1871, such a right did exist; and therefore it must be supposed that other lands were selected outside of the ten-mile limits and given to the railroad company in lieu of the land in controversy. He says that as it was the duty of the secretary of the interior to cause other lands to be selected in the place of those sold and in the place of those to which preëmption rights or homestead settlements had attached, it must be presumed that the secretary did his duty, and that other lands were so selected, and that the railroad company has received them and had the full benefit of them; and therefore that it cannot now — or, rather, that it could not on January 30, 1875, *nearly twelve years after the grant was made* — select the land in controversy, and select the same *inside* of the ten-mile limits instead of *outside* of the ten-mile limits, as the act of congress prescribes. We think, however, the question stated by counsel for plaintiff, and again stated by us in other words, is really the only question which is fairly presented in the case.

· The plaintiff claims that the preëmption entry of the land in controversy, made by Campbell on February 14, 1863, was void, for the reason that he had previously made another preëmption entry of another piece of land in the same sec-

tion. We do not think, from the facts of the case, that it necessarily follows, or even fairly follows, that Campbell's preëmption entry of the land in controversy was void. It does not appear that any person, prior to the commencement of this action, ever claimed that it was void. Indeed it seems always to have been recognized as valid. The land officers did not treat it as void, but on the contrary treated it as valid. They allowed Campbell to commute it into a homestead entry, thereby recognizing its validity. In all probability the first preëmption entry was void; and for this reason Campbell made, and was allowed to make, a second preëmption entry. The land which Campbell first preëmpted may not have been public land; it may not have been in the market; or it may have been previously preëmpted by some other person; or a homestead settlement may have previously attached to it; or something else may have existed or intervened which rendered the first preëmption entry void. In any event, it must be presumed from the circumstances of the case that the first preëmption entry was void, and that the second preëmption entry was valid. But whether either the first or the second preëmption entry was void or valid, can make but little difference in this case; for the question was purely a question between Campbell and the government of the United States, and the government has never questioned the legality or the validity of the second preëmption entry; and the plaintiff, having no right to the land either legal or equitable during the continuance of said second preëmption entry, nor for many years afterward, is in no condition to question its legality or validity now. (*Houck v. Kelsey*, 17 Kas. 333, *et seq.*, and cases there cited.)

Now if Campbell's preëmption of the land in controversy was valid, then it would seem to follow that his right to the property was perfected before his death; for from the date of the preëmption to the date of his death was just five years. But suppose that the preëmption is not valid, and that the commencement of the homestead right must date from July 7, 1863, the time when his preëmption entry was commuted

into a homestead entry, and not from February 14, 1863, the time when his preëmption entry was made: then would not the homestead right have been perfected on July 7, 1868, five years from July 7, 1863? The homestead laws provide, as will hereafter be shown, that the homestead right shall descend to the widow and children of the person who has made the homestead entry, and who dies before the homestead right is completed, and do not provide for any forfeiture of the homestead right by temporary absence or abandonment, except an abandonment for at least six months. Now Campbell died within less than six months before the full five years required by the statute to make his homestead complete had expired. The land was at no time between July 7, 1863, and July 7, 1868, abandoned for a period of six months. The United States homestead laws provide, among other things, as follows:

"SEC. 2291. No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or, if he be dead, his widow; or, in case of her death, his heirs or devisee; or, in case of a widow making such entry, her heirs or devisee, in case of her death, proved by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the government of the United States; then in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law. . . .

"SEC. 2292. In case of the death of both father and mother, leaving an infant child or children under twenty-one years of age, the right and fee shall inure to the benefit of such infant child or children; and the executor, administrator or guardian may, at any time within two years after the death of the surviving parent, and in accordance with the laws of the state in which such children, for the time being, have their domicile, sell the land for the benefit of such infants, but for no other purpose; and the purchaser shall acquire the absolute

title by the purchase, and be entitled to a patent from the United States on the payment of the office fees and sum of money above specified." (U. S. Rev. Stat. of 1878, p. 420.)

Section 2297, p. 421 of the U. S. Revised Statutes of 1878, relates to the abandonment of homesteads.

In the present case, Campbell died, leaving no widow, but leaving minor children. In such a case, the supreme court of California, in the case of *Jarvis v. Hoffman*, 48 Cal. 319, uses the following language:

"But if the father and mother should both die before the conditions were fully performed, leaving minor children, the right and fee of the land would immediately inure to their benefit, and might be sold for their use at any time within two years, without the performance of any further conditions, and the purchaser would immediately become entitled to the patent, on the payment of the office fees and such other sum of money as might then remain unpaid to the government or its officers. But if the father and mother should both die before the conditions were performed, leaving adult children or devisees and no minor children, then such adult children or devisees, on performing the remaining conditions, would be entitled to the patent, and thus acquire a title in fee."

Under these statutes it would seem that the homestead right of Campbell would inure to the benefit of his minor children at the time of his death, and that such right would remain valid and subsisting for two years at least after such death. If this construction of the statutes be correct, then Campbell's homestead right continued valid and subsistent in his minor children up to February 14, 1870; and hence the title to the land would not have passed to the railroad company on June 30, 1869, or on November 3, 1869, or at any intermediate time, for during all that time it was, in contemplation of law, a homestead under the United States homestead act. All the parties seem to have considered Campbell's homestead right as valid and subsisting up to that time; and indeed on November 24, 1871, more than a year afterward, the commissioner of the general land office declared that it was valid, and that its cancellation on June 21, 1871, caused the land in controversy to become public land and subject to homestead

entry. Under the facts of this case it does not appear that the railroad company, prior to February 14, 1870, (two years after Campbell's death,) claimed the land in controversy, by virtue of the definite location of its road on June 30, 1869; and indeed it does not appear that it claimed the land even then; but afterward the company claimed the land by virtue of its selection of the same on January 30, 1875, more than two years after the defendant had made his homestead entry of the land in controversy — nearly six years after the definite location of the company's road, and nearly twelve years after its land grant was enacted by congress.

We therefore think that the railroad company obtained no right to the land by virtue of the definite location of its road on June 30, 1869, for the reason that at that time the land was subject to the homestead right of Campbell's children; and the company did not obtain any right to the land by virtue of its selection thereof on January 30, 1875, for the reason, among others, that at that time the land was subject to the homestead right of the present defendant.

After a careful consideration of the entire case, we are inclined to think that the judgment of the court below is correct, and therefore it will be affirmed.

All the Justices concurring.